Stacey Glenn **TAYLOR**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 0048–95.

Court of Criminal Appeals of Texas. En Banc.

Oct. 9, 1996.

Janet Morrow, Houston, for appellant.

Dan McCrory, Asst. District Attorney, Houston, Matthew Paul, State's Atty., Austin, for State.

*OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW*

MANSFIELD, Judge.

A jury found appellant, Stacey Glenn Taylor, guilty of aggravated sexual assault. *See* Tex.Penal Code § 22.021. After the court determined the allegations in the enhancement paragraph to be true, it assessed punishment at life imprisonment. The Fourteenth Court of Appeals, in an unpublished opinion, affirmed. *Taylor v. State,* No. A14–92–00781–CR, 1994 WL 669173 (Tex.App.—Houston [14th Dist.] 1994). We granted appellant's petition for discretionary review, pursuant to Texas Rule of Appellate Procedure 200(c)(3), to determine: (a) whether the court of appeals erred in holding that appellant's due process rights were not violated when the trial court refused to appoint a defense expert regarding deoxyribonucleic acid (DNA) analysis, and (b) whether the court of appeals erred in holding that appellant failed to preserve error regarding the trial court's voir dire time-limitation. We will vacate the judgment of the court of appeals on both grounds, and remand the cause to that court for further proceedings consistent with this opinion.

I.

During pretrial proceedings, appellant made several motions requesting the trial court to authorize the expenditure of county funds to provide expert assistance for his defense. Appellant's first motion, filed in April of 1991, requested $2000 for investigative fees and expert consultation. In part, appellant's justification for this expenditure was apparently an assumption that the State would conduct scientific testing on the forensic evidence found at the scene of the sexual assault (e.g., semen found on the complainant's clothes). However, at the time of this first motion, the State had not yet performed any scientific testing on the forensic evidence, relying on the victim's identification of appellant to sustain the prosecution. The trial court partially overruled this request, authorizing only $600 for the "[p]ayment of an Investigator and other reasonable expenses incurred incident thereto."

In August of 1991, appellant filed a second motion entitled "Defendant's Motion for DNA Testing and Authorization for Funding." At the time of this second motion, the State had not yet performed scientific testing on the semen samples taken from the scene of the sexual assault. Appellant requested that DNA testing be performed on the "rape kit" and clothing samples, arguing that this was "the best evidence which can exonerate him of this crime." In this motion, appellant named Holly Hammond of the Institute for Molecular Genetics, Baylor College of Medicine, as an expert who could perform the DNA testing. The trial court authorized the expenditure of $750 to perform the DNA testing and ordered that the Institute "shall submit a written summary and conclusions of the test results to this Court."

The testing was completed and written summaries were distributed to the trial court, to appellant, and to the State. Hammond's conclusion was that, for at least one of the samples tested, she could not exclude appellant as a contributor. Stated statistically, her results indicated that if a person was randomly chosen from the population, there would be one chance in 12 million that the person would have genetic characteristics like that of the tested samples found on the victim's clothing. And importantly, appellant was one of those persons. After receiving this information, the State designated Hammond as its expert.

Appellant filed a third motion on June 5, 1992, requesting $5000 to obtain his own DNA expert. Appellant, after spending some time attempting to locate an available expert, named Dr. Moses Shamfield as a procurable selection. It is evident from the both the written motion and the hearing on that motion that the purpose of appellant's request was two-fold: First, appellant wanted a DNA expert to help prepare an effective

defense, particularly an effective cross-examination of Hammond, the State's expert. Second, appellant requested an expert who *might*, after reviewing the evidence, testify on his behalf.[1] The trial court denied the motion.

Appellant made a final request for a DNA expert on June 17, 1992. The written motion was essentially identical to the June 5 motion, with one exception: In the final motion, appellant provided a scientific rationale for the DNA expert by enumerating several areas in which an expert might provide assistance in challenging the State's DNA results. The trial court again denied the request. Appellant was then tried and convicted of aggravated sexual assault.

In the court of appeals, appellant argued that the trial court violated the Fourteenth Amendment when it denied his request for expert assistance. *See Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985); *Rey v. State* 897 S.W.2d 333 (Tex.Crim.App. 1995); *De Freece v. State* 848 S.W.2d 150 (Tex.Crim.App.1993). The State's response was three-fold. First, the State contended that appellant *did* obtain expert assistance when the trial court authorized Hammond to perform DNA testing at the county's expense. Due process, the State argued, did not require the provision of a second expert if the first provided only inculpatory assistance. The State's second response was that appellant failed to demonstrate a specific need for the requested expert assistance.[2] The State's argument follows:

> The thrust of [defense] counsel's argument concerned his desire to have an expert educate him regarding DNA evidence so that he could rebut the State's case on cross-examination. Defense counsel's expressed need to be tutored in the field of DNA falls short of establishing a specific need for expert assistance.

The State's third argument was that any error was harmless because the DNA case formed only a part of the State's evidence against appellant. The State pointed to the complainant's testimony in which she stated that she saw appellant's face while he sexually assaulted her, and that she had seen him on six or seven occasions prior to the offense. Therefore, the State claimed, the DNA evidence was merely cumulative of the victim's testimony identifying appellant as her attacker.

The court of appeals agreed with the State's first argument:

> The record indicates that the trial court granted appellant's motion for DNA testing, and specifically granted appellant's choice of expert to conduct the testing. Moreover, appellant had the time to prepare and had meaningful access to his expert and the results of the DNA testing. The fact that appellant was unhappy with the opinion of his first expert is insufficient reason for this Court to find an abuse of discretion. Slip Op. at 4.

The court of appeals did not reach the State's other arguments.

Appellant now argues to this Court, inter alia, that the court of appeals mischaracterized the nature of Hammond's association with the defense. Appellant argues that an honest review of the record unequivocally establishes that Hammond was never, at any time, a defense expert. Hence, the central premise in the court of appeals holding is faulty: Appellant was not asking for a second expert because Hammond was never appellant's first expert.

In response, the State again characterizes Hammond as appellant's expert. Thus, the State argues, the trial court committed no error because appellant had no right to a second expert when the first failed to support an exculpatory theory of the defense.

The United States Supreme Court has construed the Fourteenth Amendment to require the State, upon request of an indigent defendant, to provide the "basic tools of

---

1. In his motion, appellant conceded the possibility that a defense expert might concur with Hammond's inculpatory conclusions. Appellant nevertheless requested a DNA expert to develop a coherent defense strategy.

2. By "specific need" we take the State's argument to be that appellant did not meet the threshold burden explicated in *Rey v. State,* 897 S.W.2d 333 (Tex.Crim.App.1995), and *De Freece v. State,* 848 S.W.2d 150 (Tex.Crim.App.1993).

an adequate defense ... when those tools are available for a price to other prisoners." *Britt v. North Carolina,* 404 U.S. 226, 227, 92 S.Ct. 431, 433, 30 L.Ed.2d 400 (1971); *see also Ake v. Oklahoma,* 470 U.S. 68, 77, 105 S.Ct. 1087, 1093, 84 L.Ed.2d 53 (1985). The State is not required, however, to furnish indigent defendants with all the assistance their wealthier counterparts could purchase. Fundamental fairness requires only that the State provide assistance if the denial of that assistance would frustrate a fair proceeding under our adversarial system. *Ake,* supra at 77, 105 S.Ct. at 1093.

If a defendant requests an expert who can buttress a viable defense, due process is implicated when the trial court refuses the request. The essential inquiry regarding whether a defendant is constitutionally entitled to an expert is whether the expert can provide assistance which is "likely to be a significant factor" at trial. *Rey v. State,* 897 S.W.2d at 339 (quoting *Ake v. Oklahoma* ).[3]

In addition, we have also extended—at least implicitly—the due process protections recognized in *Ake* beyond the capital context. *McBride v. State,* 838 S.W.2d 248, 252 (Tex. Crim.App.1992).[4] Hence, the tenets of *Ake*—as delineated by this Court in *De Freece* and *Rey,* supra—could, in principle, require the appointment of a DNA expert to assist the defense of appellant's case. If appellant demonstrated the complexity of the issues involved and the importance of the requested expert testimony visa-vis a viable defense, then he would have been entitled to a DNA expert. *Rey* at 338.

However, the court of appeals did not reach that question. Rather, the court of appeals chose to characterize Hammond as *appellant's* expert, thereby precluding the appointment of a second defense expert. The court of appeals was correct when it recognized that due process did not require a defendant to be furnished with a testifying expert who would unequivocally support an exculpatory theory of the defense. Thus, a defendant is not entitled to "shop" for experts—at the State's expense—until he unearths a person who supports his theory of the case. Yet, if appellant met the threshold showing of *Rey,* he was entitled to at least one expert.

The court of appeals incorrectly characterized Hammond as appellant's expert. In rejecting the court of appeal's characterization, we need only consider one circumstance which undermines its assertion: Hammond furnished her inculpatory scientific conclusions to *all* parties, *including the prosecution.* Indeed, the State, after obtaining Hammond's report, retained her as *its* expert witness for *its* case-in-chief and utilized the powerful evidence *against* appellant. If Hammond was genuinely appellant's DNA expert, then her conclusions were the work-product of defense counsel and would never have been provided to the prosecutor.

In *De Freece v. State,* 848 S.W.2d at 159, we explained the purpose of the *Ake* requirement:

[Due process] means the appointment of [an expert] to provide technical assistance to the accused, to help evaluate the

3. There are many formulations of the *Ake* test utilized in many jurisdictions: *Moore v. Kemp,* 809 F.2d 702 (11th Cir.1987), cert. denied, 481 U.S. 1054, 107 S.Ct. 2192, 95 L.Ed.2d 847 (1987) (Defendant must show the trial court that there exists a reasonable probability both that the expert would be of assistance to the defense and that a denial of expert assistance would result in a fundamentally unfair trial); *U.S. v. Bailey,* 886 F.Supp. 7 (S.D.W.Va.1995) (In determining whether defendant was entitled to appointment of expert to assist counsel in preparation and presentation of defense, question to be resolved was whether expert sought could buttress a viable defense); *State v. Jones,* 339 N.C. 114, 451 S.E.2d 826 (1994) (In order to obtain expert, defendant must establish that the aid of the ex-

pert is likely to be a significant factor a trial. The expert's assistance constitutes a significant factor if it would materially aid the preparation of the defense); *Husske v. Com.,* 19 Va.App. 30, 448 S.E.2d 331 (1994) (a defendant meets the threshold by showing the existence of a significant controversy within the scientific community concerning random match probability and the potential effect of that issue upon the DNA evidence offered by the State at trial).

4. Given the serious nature of this crime as reflected through appellant's sentence—life imprisonment—there can be no doubt regarding the propriety of extending *Ake* to this noncapital case.

strength of his defense, to offer his own expert [opinion] at trial if it is favorable to that defense, and to identify the weaknesses in the State's case, if any, by testifying himself and/or preparing counsel to cross-examine opposing experts.

Thus, if a defendant can demonstrate that due process requires the provision of an expert, at State expense, then that expert can serve one, or both, of two objectives: First, an expert can play a partisan role in the defense, providing defense counsel with the "tools" to challenge the State's case. *Id.* In this context, due process, at a minimum, requires expert aid in an evaluation of a defendant's case in an effort to present it in the best possible light to the jury. *Id.* Second, if his expert opinion supports the defense theory, an expert can testify in support of that defense.[5] *Id.*

Hammond fulfilled neither of those purposes. She plainly did not testify for appellant. Even so, this fact is not dispositive because appellant did not have an absolute right to an expert who agreed with the defense theory and would testify in its support. However, Hammond also failed to provide even the minimal level of partisan assistance to appellant.

■ In this context, the State argues that, after it named Hammond as its testifying expert, appellant had access to her, and spent two hours interviewing her before the trial. Hence, the State contends appellant had the requisite due process guarantee. Yet, Hammond could not provide such support. She was asked to testify for the State in support of her scientific conclusions. Certainly, a defendant's due process right to an expert cannot be satisfied by reliance upon an individual who will subsequently testify for the State regarding the accuracy of the very tests the defendant is trying to impeach. In an analogous context, we have held that

the availability of a "neutral" expert to the defense did not accommodate the due process interest in having an expert assist in the preparation of that defense. *De Freece,* supra. If a "neutral" expert is deficient, then certainly the State's testifying expert is also deficient. That Hammond was available to appellant is insufficient.

The trial court merely authorized a DNA test, at the State's expense. There is no indication in the record that the trial court authorized funding for anything more than the test. Whether such testing was performed had no bearing on the due process issues involved when the State sought to use that test against the defendant. While it is true that appellant was the impetus for Hammond's DNA analysis,[6] nothing about appellant's conduct dictates the conclusion that Hammond provided the minimal constitutional assistance depicted in *Rey* and *De Freece.* Without that minimum constitutional assistance, it would be error to characterize Hammond as appellant's expert for the purpose of due process.

The court of appeals erred when it characterized Hammond as appellant's expert. Appellant was entitled—at least in principle—to a DNA expert if he satisfied the threshold requirements delineated in *De Freece* and *Rey.* The court of appeals failed to address that issue, and we remand the case to that court so that it can determine whether appellant met his threshold burden under *Rey* and *De Freece.*

## II.

In appellant's second ground for review, he contends that the court of appeals erred when it held that he failed to preserve error regarding the trial court's voir dire time-limitation. The trial court constricted appellant's voir dire in the following exchange:

---

5. However, a defendant is *not* entitled to an expert who will concur with the defensive theory and testify accordingly. Due process requires, at a minimum, only an expert who will assist defense counsel in the preparation of a defense. *De Freece,* supra.

6. We have never found a constitutional right to a DNA expert when the State has not made DNA an issue of its proof, and we do not address that

issue today. In the present case, appellant requested DNA testing before the State demonstrated its intent to utilize DNA analysis in its case against appellant. The record does not reveal the trial court's legal basis for granting appellant's request, or even if the trial court considered itself legally obligated to provide funds for such DNA analysis under *Ake.*

[The trial court interrupts defense counsel during voir dire questioning.]

THE COURT: In the next ten minutes.

DEFENSE COUNSEL: I think I'm going to need a whole lot more time than that.

THE COURT: Sorry; you get ten minutes.

\* \* \*

[Defense counsel continues questioning the venire panel]

DEFENSE COUNSEL: Is anybody confused about this? Anybody want an explanation any further, the best I can do? No. Thank you.

THE COURT: You need to kind of conclude now, sir. You have used your time.

DEFENSE COUNSEL: Thank you, Your Honor. Bear with me I'm going through my checklist.

Does anybody here—sounds like a dumb question: Does anybody in here believe in the death penalty? Raise your hands.

Thinking back to jury deliberations—

THE COURT: Mr. Thompson [to defense counsel], I hate to make an issue on this, but you're out of time. We appreciate it.

DEFENSE COUNSEL: I'd like to be able to follow up on this on the record, then, at some other time. I do have a whole bunch of questions I need to ask.

THE COURT: Some other time.

\* \* \*

THE COURT: Let's go ahead and let Mr. Thompson make his record with regard to voir dire.

DEFENSE COUNSEL: Thank you, Your Honor.

THE COURT: For the purposes of the record, I do want to make it known that Mr. Thompson made the request to do this particular hearing prior to beginning the challenges for cause and to making his peremptory strikes in this case. It was my feeling that he could go forth with making his record with regard to being denied the opportunity to ask further questions of the venire panel at this point. Go right ahead, Mr. Thompson.

\* \* \*

[Defense counsel reads a lengthy series of questions into the record.]

DEFENSE COUNSEL: I think that's it. Thanks.

THE COURT: Just for the purposes of the record, Mr. Thompson began his voir dire at almost the stroke of 1:30 p.m. I asked him to conclude at 15 minutes until 3:00, at a quarter till 3:00. That's in the afternoon.

The court of appeals refused to address appellant's contention that the trial court improperly restricted voir dire. It held that appellant failed to make a specific and contemporaneous objection to the restriction, citing *Long v. State*, 823 S.W.2d 259, 275 (Tex.Crim.App.1991).

■ We granted appellant's petition for discretionary review to address whether the court of appeals was correct in declaring that appellant waived appellate review by failing to properly object to the voir dire time-limit. We addressed the standards of procedural default in *Lankston v. State*, 827 S.W.2d 907 (Tex.Crim.App.1992):

The standards of procedural default, therefore, are not to be implemented by splitting hairs in the appellate courts. As regards specificity, all a party has to do to avoid the forfeiture of a complaint on appeal is to let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it. Of course, when it seems from context that a party failed effectively to communicate his desire, then reviewing courts should not hesitate to hold that appellate complaints arising from the event have been lost. But otherwise, they should reach the merits of those complaints without requiring that the parties read some special script to make their wishes known.

Of critical importance is whether the trial court understood appellant's objection, including the legal basis for the objection.

Where the record makes clear that the trial court understood an objection and its legal basis, a trial court's ruling on that objection will be preserved for appeal, despite an appellant's failure to clearly articulate the objection. *Cofield v. State,* 891 S.W.2d 952, 954 (Tex.Crim.App.1994). Hence, appellant was not necessarily compelled to state the magic words "I object" to preserve error.

█ Application of the legal standard to the facts at bar demonstrates that the court of appeals incorrectly propounded procedural bar. Appellant undoubtedly resisted the trial court's decision to curb voir dire. Of more consequence is appellant's request to "follow up" with the voir dire restriction "on the record." The trial court clearly comprehended appellant's supplication as a request to create an appellate record encompassing the restricted questions. We know this because the trial court suggested, sua sponte, that appellant "make his record with regard to voir dire" later in the proceeding. Since the trial court permitted appellant the opportunity to create a "bill of exceptions," then it must, logically, have understood appellant to have objected to the limitation.

Appellant next read the restricted voir dire questions into the record. These proposed questions were lengthy and occupied several pages of the record. After appellant concluded his extensive dissertation of questions, the trial court stated "for the purposes of the record" that it had allotted to appellant one hour and fifteen minutes to conduct voir dire. The trial court was undoubtedly directing this observation to an appellate court, so that the appellate court could properly review the voir dire time limitation. It is evident from the record that the trial court understood appellant to have objected to the voir dire limitation.

█ We do not mean to suggest that an objection is sufficient if the objecting party merely resists a trial court's ruling. Rather, the practitioner should carefully and clearly state her objection to ensure appellate review of an issue. If the basis of an objection is not manifestly self-evident from the context, then the movant must object with sufficient specificity—stating with clarity both the nature of the objection and the legal basis for the objection—to preserve any error for appellate review.

In the case at bar, it is self-evident from the record both that appellant was "objecting" to the trial court's voir dire restriction and that the trial court understood appellant's actions as such. If, however, appellant's objection could not fairly have been construed as relating to the voir dire restriction, then appellant would have waived error. Indeed, if appellant's "objection" was subject to multiple interpretations, then error would be waived. The trial court will not be required to infer the meaning of an ambiguous objection, or to pick among the multiple meanings of an inarticulate objection.

Since it is apparent from the record that the trial court understood appellant's objection, we hold that the court of appeals erred when it held that appellant waived appellate review of the voir dire time-limit.

We VACATE the judgment of the court of appeals as to both grounds for review, and we REMAND the cause to that court for further proceedings consistent with this opinion.

McCORMICK, P.J., concurs in the result.

WHITE and KELLER, JJ., dissent.