In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-03-00170-CR


______________________________




RALPH HUGH HOWES, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 115th Judicial District Court


Upshur County, Texas


Trial Court No. 13,035




 




Before Morriss, C.J., Ross and Carter, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 Ralph Hugh Howes has filed a motion with this Court seeking to withdraw his notice of
appeal and dismiss his appeal. Pursuant to Tex. R. App. P. 42.2, his motion is granted.

 The appeal is dismissed.



 Jack Carter

 Justice


Date Submitted: August 11, 2003

Date Decided: August 12, 2003


Do Not Publish



 Name="heading 5"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 












 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00128-CR

                                                ______________________________

 

 

                                     REGINALD SANDERS,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                      On Appeal from the 202nd
Judicial District Court

                                                             Bowie County, Texas

                                                       Trial Court
No. 09 F 363 202

 

                                                   
                                               

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                              Memorandum Opinion by Justice Carter








                                                     MEMORANDUM 
OPINION

 

            Reginald
Sanders was convicted by a Bowie County jury of aggravated robbery and, after evidence
of numerous prior convictions was presented, he was assessed punishment of
fifty years imprisonment.  On appeal, he
claims hearsay evidence of his co-defendant was admitted, in violation of Crawford v. Washington.[1]  While we agree with Sanders that hearsay
evidence was presented to the jury, we find no harm ensued.  Further, no Crawford issue was preserved, and we overrule Sanders appellate
point of error.  

I.          Facts 

            Around
5:30 the morning of February 26, 2009, Tenzing Sherpa was finishing his shift
as clerk of a convenience store in Texarkana. 
Some regular customers came in, as did two men, one of whom was
Sanders.  Sherpa noticed the two men go
to the restroom; at one point, one of the regular customers, Toncie Reed, spoke
to Sanders.  Reed testified he knew
Sanders and identified him as being at the store that morning.  After the other customers left, Sanders and
his partner exited the store.  Sanders
remained outside while the other man returned. 
Sherpa described Sanders conduct while outside the store as being on
the lookout; he said he made eye contact with Sanders at one point, and
observed Sanders to appear fidgety and on alert, as he looked into the
store, then around the area outside the store. 
Sanders partner, who was in the store, threatened Sherpa with a hammer
and demanded money; the robbers left with about $400.00.  

            Detective
Scott Sartor investigated the robbery; based on Reeds statement, Sartor
contacted Sanders, who admitted going to the store, but denied being involved
in the robbery.  Sartor had also been
investigating other robberies where a hammer was used or exhibited.  One witness in one of those other robberies identified
a suspect, Anthony Washington.  At
Sanders trial, Sartor related some information he obtained from
Washington.  This is the basis of Sanders
appellate complaint.  

II.        Preservation of Error

            Before
analyzing Sanders point of error, we must determine the arguments that
were  sufficiently preserved for our
review.  Preservation is a systemic
requirement that a first-level appellate court should review on its own
merits.  Archie v. State, 221 S.W.3d 695, 698 (Tex. Crim. App. 2007).  However, we will not be hyper-technical in
our examination of whether error was preserved.  Id.  The State argues that Sanders appellate
argument does not comport with the objection he lodged at trial.  See
Wilson v. State, 71 S.W.3d 346, 349
(Tex. Crim. App. 2002).  Even an
imprecise objection preserves error when the specific grounds were apparent
from the context.  Tex. R. App. P. 33.1(a)(1)(A); see Taylor
v. State, 939 S.W.2d 148, 155 (Tex. Crim. App. 1996) (Where the record
makes clear that the trial court understood an objection and its legal basis, a
trial courts ruling on that objection will be preserved for appeal, despite an
appellants failure to clearly articulate the objection.); Lankston v. State, 827 S.W.2d 907, 909
(Tex. Crim. App. 1992).  However, in
certain circumstances more precision is required to adequately preserve a
complaint for appellate review.  For
example, an offer of evidence to attack a witness credibility could be
construed as being made pursuant to a rule of evidence or under the
Confrontation Clause.  Reyna v. State, 168 S.W.3d 173, 179
(Tex. Crim. App. 2005).  Such an
objection is not sufficiently specific to preserve error.  Id.  An objection on hearsay does not preserve
error on Confrontation Clause grounds.  Id. (citation omitted).  

            Detective
Sartor was questioned about information he obtained in the course of his
investigation; when he began to divulge what co-defendant Washington told
Sartor, Sanders objected that such testimony would be hearsay.  When Sanders objections were overruled,
Sartor said the co-defendant in this case told him the two robbers, after the
robbery, returned to a narcotics location where they had been before the
crime.  Sanders again objected to hearsay
(the trial court did not rule on this objection, instead instructing the State to
rephrase the question).  Sartor then
testified Washington told him the two robbers returned to the narcotics
location and used the proceeds from the robbery to buy drugs for themselves
and the person who had driven them to the store.   

            To
this point in the trial, Sanders had only objected to hearsay; he made no
mention of a Confrontation Clause violation or to Crawford.  To the extent he
complains about the admission of hearsay by the trial court, we address that
allegation.

III.       Hearsay Evidence

            Based
on Reeds identification of Sanders in the store before the robbery, Sartor
interviewed Sanders.  In describing his
investigation, Sartor discussed another suspect, Washington, who had been
arrested in the case.  After three
hearsay objections, and instructions from the State and the trial court that he
could not testify to what he was told by another person, Sartor gave the
following testimony:  

            The
-- Im trying to think of the best way to word this.  We were advised during several interviews
that a van had been seen in more than one of the robberies that we worked on.[2]  In this particular case, we were advised
there was a van that left the scene from the parking lot of Albertsons, which
is directly behind this particular store.

 

            .
. . . 

 

            We
were able to later determine that these individuals left the scene of the
robbery together and went to a narcotics location in the Beverly area, that
these two individuals had initially arrived at and met at [sic] earlier that
morning, traveled from that particular location to the Grab and Go, and we were
able to determine that they went back to that location.  In the course of Mr. Sanders investigation,
he admitted that they did leave a location together and get in a van, so the
two statements appeared to be consistent that they did meet up at one location
and go back to that location.

 

            .
. . . 

 

            During
the course of the investigation, another suspect in this particular case is
where I got this information, advised me that they met at the same location.

 

This last statement drew another
hearsay objection from Sanders, and the trial court ordered the State to rephrase
the question.  

            Q         [Attorney for the State]  As a result of the information that you
received from any individual, just detail what, without saying what that person
said, what your investigation revealed, where they went and what they did.

 

            A         [Sartor]  My investigation revealed that the two
individuals went back to a narcotics location, and the -- money from the
robbery was used to purchase narcotics for all the parties involved, meaning
both the two people that went and participated in the robbery and the driver of
the vehicle.  

 

Sartor went on to say that in his
experience, it was common for proceeds of robberies to be used to buy
drugs.  He then described how Washington
had become a suspect. 

            Although
he couched his testimony in terms of what he learned in the course of his
investigation, we agree with Sanders that some of Sartors testimony was
essentially a recitation of what co-defendant Washington told Sartor.  Sanders testified to the jury that in the
course of Sartors investigation, another suspect in this particular case . .
. advised me that they met at the same location, i.e., a narcotics location
the two robbers had visited prior to the robbery.  Also, just before this statement, when Sartor
first described the information he obtained that the robbers were at the
particular location, Sartor compared this information and said that Sanders
told Sartor he and another man left a location together in a van, so the two
statements appeared to be consistent that they did meet up at one location and
go back to that location.  From the
context of Sartors testimony, it is clear the two statements to which he
refers are those of Sanders and Washington. 


            Sartor
testified to statements made by a nontestifying witness, and Sartors testimony
was offered for the proof of the matter asserted:  that Washington was with Sanders before,
during, and after the robbery and that they used the crimes proceeds to buy
drugs.  See Tex. R. Evid.
801(d).[3]  As such, this part of Sartors testimony was
improper.

            Improper
admission of hearsay evidence amounts to nonconstitutional error.  See Johnson v. State, 967 S.W.2d 410, 417
(Tex. Crim. App. 1998); Dunn v. State,
125 S.W.3d 610, 614 (Tex. App.Texarkana 2003, no pet.).  Any nonconstitutional error which does not
affect substantial rights must be disregarded.  See Tex. R. App. P. 44.2(b).  We may not reverse a defendants conviction
for nonconstitutional error if, after examining the record as a whole, we have
a fair assurance that the error did not have a substantial and injurious effect
or influence in determining the jurys verdict.  Garcia
v. State, 126 S.W.3d 921, 927 (Tex. Crim. App. 2004).  In determining harm, we consider everything
in the record, including any testimony or physical evidence admitted for the
jurys consideration, the nature of the evidence supporting the verdict, and
the character of the alleged error and how it might be considered in connection
with other evidence in the case.  Haley v. State, 173 S.W.3d 510, 518
(Tex. Crim. App. 2005).

            Here,
direct and substantial evidence was presented supporting the verdict.  Two witnesses identified Sanders as being
present at the store the morning of the robbery.  Even Sanders admitted that he was present at
the store during the time of the robbery, but denied involvement in the
robbery.  Reed, who was personally
acquainted with Sanders, was present in the store the morning of the robbery
and observed Sanders inside the store and exchanged greetings with him.  Reed later identified Sanders from a photographic
lineup and again at trial.  Store clerk
Sherpa identified Sanders as having returned outside the store watching events
unfold while the other man robbed Sherpa; Sherpa described Sanders as appearing
to be on lookout during the robbery.  The
two men left together and ran away. 

            The
indirect hearsay statement of Washington was not particularly important to the
States case.  The State did not mention
the robbers return to a house in closing arguments.  After examining the record as a whole, we
conclude that the erroneous admission of hearsay evidence did not have a
substantial and injurious effect or influence in determining the jurys
verdict.  

IV.       Confrontation Issue Was
Not Preserved 

            Sanders
appellate brief also argues that Sartors introduction of hearsay evidence
violated Sanders Confrontation Clause rights as articulated in Crawford.  However, Sanders never objected to the
above-discussed testimony on grounds of Crawford,
limitation of cross-examination rights, or confrontation.  All of the testimony discussed above was
objected to only as hearsay; such an objection does not preserve an issue of
the Sixth Amendment right of confrontation. 
Reyna, 168 S.W.3d at 179.  Sanders never mentioned confrontation or the Sixth
Amendment until the State asked the following question:

            Q         [Attorney for the State]  All right. 
And in regard to this case, you received information from [Washington]
in the course of your investigation which implicated --.

 

                        [Sanders Attorney]  Judge, Im going to object to anything that
Anthony Washington told this man in the course of his investigation.  It is hearsay and the result of hearsay
testimony.  We have no right to cross[-]examine
or confront Mr. Washington.  

 

No further testimony was received;
the jury was sent out, and the parties made arguments to the trial court.  At the conclusion of this discussion, the
State agreed to abandon this line of questioning.  When the jury returned, the State passed
Sartor for cross-examination, and no further reference to statements of
Washington was made.  Since no evidence
was introduced having to do with Washingtons statement after Sanders
confrontation objection, there is nothing about which he can complain on appeal,
and nothing for us to review.

            We overrule Sanders point of error
and affirm the judgment and sentence of the trial court.  

 

 

                                                                        Jack
Carter

                                                                        Justice

 

Date Submitted:          February 28, 2011

Date Decided:             March 3, 2011

 

Do Not Publish

 











[1]541
U.S. 36 (2004).





[2]Sanders
argues in his brief that Sartors testimony about what he learned from
Washington unfairly affiliated Sanders with these other robbery investigations
to which Sartor referred.  From the
record as a whole, though, we find that Sartors mention of these other
robberies referred to information he obtained through witnesses other than
Washington and as part of other ongoing investigations in which Sartor was
involved.  





[3]Hearsay
is a statement, other than one made by the declarant while testifying at the
trial or hearing, offered in evidence to prove the truth of the matter
asserted.  The State makes no attempt to
argue that Washingtons statement was admissible as a co-conspirator during the
course of a conspiracy.  Tex. R. Evid. 801(e)(2)(E).