OPINION HEADING PER CUR 















NO. 12-05-00314-CR

 

IN THE COURT OF APPEALS

 

TWELFTH COURT OF APPEALS
DISTRICT

 

TYLER, TEXAS

 

TYRONE TAYLOR,                                      §                      APPEAL FROM THE 159TH

APPELLANT

 

V.                                                                    §                      JUDICIAL DISTRICT COURT OF

 

THE
STATE OF TEXAS,

APPELLEE                                                   §                      ANGELINA COUNTY, TEXAS

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 

 

 



MEMORANDUM
OPINION








            A jury convicted Appellant, Tyrone Taylor, of aggravated
sexual assault.  At the punishment
hearing, the State introduced evidence that two months after the commission of
this offense, Appellant burglarized the residence of a seventy year old woman whom
he had threatened to kill.  He also was
currently under indictment for burglary of a habitation and sexual assault
alleged to have occurred on November 28, 1995. 
The State also introduced evidence of Appellant’s prior convictions for
possession of marijuana, evading detention, and assault on a public
servant.  The trial court assessed
Appellant’s punishment at imprisonment for life.  In three issues, Appellant complains that he
was denied a public trial, that he was denied effective assistance of counsel,
that the trial court erred in denying him another DNA test, and that the
evidence was factually insufficient to support the jury’s verdict.  We affirm.

 

Background








            On April 10, 2004 at around 7:30 p.m., the victim (“Jane
Doe”) was at home talking on the telephone. 
She expected a visit from her daughter, so when she heard someone at the
door, she unlocked and opened it.  The
person at the door asked to use the telephone. 
Jane Doe said “no” and tried to shut the door, but the intruder forced
his way into the house, put his hand over her mouth, and said he had a gun and
needed money.  Appellant took money from
the top of the bedroom table and asked about her purse.  Jane Doe told him to take the purse and
anything else and leave.  The intruder
laughed and said, “[T]hat’s not all I came after, you’ve never had sex with a
black man, huh.”  He pushed her on the
bed, removed her underclothes, and attempted to penetrate her anally.  Next, the assailant turned her over and told
her he would kill her if she did not lie still. 
He then penetrated her vagina with his penis.  The telephone rang, and the assailant fled
shortly thereafter.  Jane Doe immediately
called the police and described her assailant as a black male, between five
feet six inches to six feet tall, wearing a white t-shirt and gray sweat
pants.  

            A sexual assault nurse examiner examined the victim.  The record of that examination showed
bruising and swelling of her vagina and a skin tear to her anal opening.  Vaginal and anal swabs and smears were made,
and pubic hair combings and saliva and blood samples were also taken.  The swabs and smears showed semen and
spermatozoa.

            Jane Doe did not identify Appellant in any of the photo
lineups she was shown.  In her testimony
at trial, however, she said that she was positive it was Appellant who sexually
assaulted her.

            DNA was obtained from Appellant’s saliva sample and
compared to the DNA from the sperm found on the vaginal swab.  Robin Freeman, the DNA section supervisor,
made the DNA analysis of the samples submitted. 
He testified that Appellant could not be excluded as a contributor and
that the statistical probability of selecting an unrelated black person who
could not be the contributor of the DNA profile was 1 in 19.93 million.

            Appellant called two close friends who testified
Appellant had been a pall bearer with them at a funeral and that Appellant had
stayed at his aunt’s for dinner until sometime after the assault was alleged to
have occurred.  Appellant also introduced
an obituary notice that listed him as a pall bearer.

 

Denial of a Public Trial

            In his first issue, Appellant contends the
trial court erred in denying him a public trial.

Applicable Law

             The Sixth
Amendment to the Constitution of the United States and Article I,
section 10 of the Texas Constitution both provide that in all criminal
prosecutions, the accused shall have a speedy public trial.  The Texas Code of Criminal Procedure mandates
that the proceedings and trials in all courts shall be public.  Tex.
Code Crim. Proc. Ann. art. 1.24 (Vernon 2005).  The Supreme Court of the United States
has declared a four part test for determining whether an accused has been
denied the right to a public trial:

 

(1)           the
party seeking to close the hearing must advance an overriding interest that is
likely to be prejudiced;

 

                (2)
          the closure must be no broader
than necessary to protect that interest;

 

(3)           the
court must consider reasonable alternatives; and

 

(4)           the
court must make findings adequate to support the closure.

 

 

Waller v. Georgia, 467 U.S. 39, 48, 104 S. Ct. 2210, 2216, 81 L. Ed. 2d
31 (1984); see also United States v. Edwards, 303 F.3d
606, 616 (5th Cir. 2002), cert. denied, 537 U.S.
1192, 123 S. Ct. 1272, 154 L. Ed. 2d 1025
(2003).  

Discussion

            At the hearing on Appellant’s motion for new trial,
Demetrius Vinson testified that he attended the first day of the trial with
three of his friends.  During the first
recess, he approached Appellant’s attorney and told him that Appellant and he
were both pall bearers at Chris Green’s funeral on the day the crime
occurred.  According to Vinson, after the
recess, a police officer asked him and his friend, Johnny Craddock, to step out
of the courtroom.  They were taken to an
office where they were identified and searched. 
They were also accused of looking suspicious and making hand
signals.  Vinson explained that while the
jury was out of the courtroom, he had greeted Appellant by asking “Hey, what’s
up dog.”  After they were questioned by
the officers, neither he nor Craddock were allowed back into the
courtroom.  During the lunch break, he
and the three attending the trial with him were followed by the police for
three to five minutes after they left the courthouse.  Although he had planned to return to the
trial, he did not return, because he was intimidated by what he considered
police harassment.  He told the court
that the courtroom was closed after the first recess.  Appellant argues that the officer’s actions
dissuaded other citizens from entering the courtroom effectively depriving him
of a public trial.  








            Vinson admitted that he saw the sign
on the courtroom door that, in order to avoid distracting the jury, people were
to come in and out only at certain times. 
Vinson also acknowledged that he knew Appellant had once tried to
escape.  There was no evidence that the
officers questioned anyone else or denied them admission to the courtroom.  There is no evidence that the trial judge or
the prosecutor ordered Vinson and Craddock to be taken from the courtroom and
questioned.  There is nothing to show that
they or the jury were aware that it occurred.

            Reasonable limitations on public
attendance may be imposed where they are necessary to protect a state interest
that outweighs the defendant’s right to public scrutiny.  Hernandez v. State, 914 S.W.2d
218, 222 (Tex. App.–El Paso 1996, pet. ref’d). 
The record does not show that the security measures in place during
Appellant’s trial rose to the level of discouraging public access to the
proceedings.  Appellant’s first issue is
overruled.

 

Refusal of the Trial
Court to Order a Retest of DNA 

            In his second issue, Appellant
contends the trial court erred in denying his request for a second DNA
test.  Four days before trial, Appellant’s
counsel requested that Appellant be brought before the court so that he could
express his dissatisfaction with his appointed counsel.  One of the disputes between Appellant and his
attorney was his attorney’s refusal to ask for another DNA test.  His attorney told the court that he could not
present such a motion without good grounds to support it.  The court then asked Appellant if the
evidence needed to be tested again. 
Appellant replied, “I would like, but-yeah.  I feel that in my heart, yeah, because it’s
my feeling.”  The court asked, “It’s your
feeling that its inaccurate?”  Appellant
responded, “Yes, sir.”  No basis for
challenging the reliability was offered by Appellant or his counsel.  The court refused to order another DNA
test.  With no basis shown beyond
Appellant’s belief that the results were wrong, the trial court did not err in
denying a second test of Appellant’s DNA. 
Appellant’s second issue, as it pertains to the trial court’s denial of
a second DNA test, is overruled.

 

Ineffective Assistance
of Counsel

            In his second issue, Appellant also
maintains that his counsel was ineffective in that he did not ask the court to
provide a DNA expert to assist the defense.

Standard
of Review

            The standard for testing claims of
ineffective assistance of counsel is set out in Strickland v. Washington,
466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and adopted for Texas
constitutional claims in Hernandez v. State, 726 S.W.2d 53, 56-57
(Tex. Crim. App. 1986).  To meet his
burden, an appellant must prove that his attorney’s representation fell below
the standard of prevailing professional norms and that there is a reasonable
probability that, but for the attorney’s deficiency, the result of the trial
would have been different.  Tong v.
State, 25 S.W.2d 707, 712 (Tex.
Crim. App. 2000).  A “reasonable
probability” is a probability sufficient to undermine confidence in the outcome
of the proceeding.  Strickland,
466 U.S. at 694, 104 S. Ct. at 2068; Hernandez, 726 S.W.2d at
55.  In evaluating the effectiveness of
counsel, the reviewing court looks to the totality of the representation and
the particular circumstances of each case. 
Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App.
1999).

            Our review of counsel’s
representation is highly deferential; we indulge a strong presumption that
counsel’s conduct falls within a wide range of reasonable representation.  Strickland, 466 U.S. at 689, 104 S. Ct.
2065; Tong, 25 S.W.3d at 712. 
This court will not second guess through hindsight the strategy of
counsel at trial, nor will the fact that another attorney might have pursued a
different course of action necessarily indicate ineffective assistance.  Harner v. State, 997 S.W.2d
695, 704 (Tex. App.–Texarkana 1999, no pet.). 
Any allegation of ineffectiveness must be firmly founded in the record,
and the record must affirmatively demonstrate the alleged ineffectiveness.  Thompson v. State, 9 S.W.3d 808,
813 (Tex. Crim. App. 1999).

            We further recognize that the Texas
Court of Criminal Appeals has held that, under normal circumstances, the record
on direct appeal will not be sufficient to show that counsel’s representation
was so deficient and so lacking in tactical or strategic decisionmaking as to
overcome the presumption that counsel’s conduct was reasonable and
professional.  Mallett v. State,
65 S.W.3d 59, 63 (Tex.
Crim. App. 2001).  In addressing this
reality, the court has explained that appellate courts can rarely decide the
issue of ineffective assistance of counsel because the record almost never
speaks to the strategic reasons trial counsel may have considered.  The proper procedure for raising this claim
is therefore almost always habeas corpus. 
Aldrich v. State, 104 S.W.3d 890, 896 (Tex. Crim. App. 2003).  Nevertheless, some claims may be disposed of
on direct appeal where “trial counsel’s ineffectiveness is so apparent from the
record.”  Massaro v. United States,
538 U.S. 500, 508, 123 S. Ct. 1690, 1696, 155 L. Ed. 2d 714 (2003); Thompson,
9 S.W.3d at 814 n.6.

 

Applicable
Law

            The Fourteenth Amendment requires
the state, upon request by an indigent defendant, to provide the “basic tools
of an adequate defense . . .when those tools are available for a price to other
prisoners.”  Britt v. North Carolina, 404 U.S.
226, 227, 92 S. Ct. 431, 433, 30 L. Ed. 2d 400
(1971).  The requirement that the state
furnish “basic tools for an adequate defense” does not mean the state must
provide the indigent with the same assistance a wealthier defendant could buy,
but “requires only that the [s]tate provide assistance if the denial of that
assistance would frustrate a fair proceeding.” 
Taylor
v. State, 939 S.W.2d 148, 152 (Tex. Crim. App. 1996).  If the defendant contends that he is
constitutionally entitled to an expert, the essential inquiry is whether the
expert can provide assistance that is “likely to be a significant factor at
trial.”  See Rey v. State,
897 S.W.2d 333, 339 (Tex. Crim. App. 1995). 
“If [the] appellant demonstrated the complexity of the issues involved
and the importance of the requested expert testimony [in relation to] a viable
defense, then he would have been entitled to a DNA expert.” Taylor, 939 S.W.2d at 152.  “[A] defendant is not entitled to an expert
who will concur with the defensive theory and testify accordingly.”  Id.
at 153 n.5.  But at a minimum, due
process requires expert aid in the evaluation and presentation of the defendant’s
case and the identification of weaknesses in the state’s case.  Id.  If his expert opinion does support the
defense theory, an expert can testify in support of the defense.  Id.

Discussion

            Appellant’s sole basis for his claim
of ineffective assistance is his attorney’s failure to request that the State
provide a DNA expert to assist him.  He
vaguely asserts that an expert could have provided input as to whether the
tests were conducted properly and whether contamination was an issue.  Appellant points to no specific deficiencies
in his counsel’s cross examination of the State’s experts on those two
issues.  His counsel’s vigorous cross
examination of the State’s DNA expert regarding custody, contamination, testing
procedure, and statistical reliability involved in the use of DNA in forensics
demonstrated that he was well informed regarding the scientific and legal
issues related to DNA testing.  A Texas
Department of Public Safety serologist did the initial DNA tests.  Counsel took the serologist on voir dire, and
he challenged the chain of custody of the State’s evidence.  Appellant has pointed to no deficiency in his
counsel’s performance resulting from his lack of assistance by a defense DNA
expert.  There is no showing that counsel’s
performance was ineffective.  Appellant’s
second issue, as it pertains to ineffective assistance of counsel, is
overruled.

 

Factual Sufficiency

            In his third issue, Appellant
challenges the factual sufficiency of the evidence to support the jury’s
verdict.  

Standard
of Review

            The court of criminal appeals
explained the factual sufficiency standard in Zuniga v. State,
144 S.W.3d 477 (Tex. Crim. App. 2004):  

 

There is only one question to be answered
in a factual sufficiency review: Considering all of the evidence in a neutral
light, was a jury rationally justified in finding guilt beyond a reasonable
doubt?  However, there are two ways in
which the evidence may be insufficient.  First,
when considered by itself, evidence supporting the verdict may be too weak to
support the finding of guilt beyond a reasonable doubt.  Second, there may be both evidence supporting
the verdict and contrary to the verdict. 
Weighing all evidence under this balancing scale, the contrary evidence
may be strong enough that the beyond-a-reasonable-doubt standard could not have
been met, so [that] the guilty verdict should not stand.  This standard acknowledges that evidence of
guilt can “preponderate” in favor of conviction but still be insufficient to
prove the elements of crime beyond a reasonable doubt.  Stated another way, evidence supporting guilt
can “outweigh” the contrary proof and still be factually insufficient under a
beyond-a-reasonable-doubt standard.  

 

 

Id. at
484-85.

Discussion

            Appellant contends that the evidence
is insufficient because two friends testified that he was with them at a
gathering following a funeral at which all three were pall bearers.  The crime was committed shortly before 8:00
p.m.  Phipps testified that Appellant was
with them until at least 8:15 p.m. when Phipps left.  Goff said Appellant was gone only a few
minutes around 7:45 p.m. to buy something at the Sonic Burger, but not long
enough to commit the crime and return.

            The victim was positive that
Appellant was her assailant.  The DNA
tests indicated that there was 1 chance in 19.93 million that an unrelated
random person in the black population was a contributor to the DNA obtained
from the sperm in the victim’s vaginal swabs. 
The credibility of the witnesses and the weight to be given their testimony
is for the jury to determine.  Margraves
v. State, 34 S.W.3d 912, 919 (Tex.
Crim. App. 2000).  The evidence
supporting the conviction is sufficient to prove the elements of the crime
beyond a reasonable doubt, and the contrary evidence is not so compelling that
it casts doubt on the result.  The
evidence is factually sufficient to support the conviction.  Appellant’s third issue is overruled.

 

Disposition

            The judgment is affirmed.

 

 

 

                                                                                                     BILL BASS    

                                                                                      Justice

 

 

 

 

 

Opinion delivered July 12, 2006.

Panel
consisted of Worthen, C.J., Griffith,
J. and Bass, Retired Justice, Twelfth
 Court of Appeals, Tyler
,
sitting by assignment.

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

(DO NOT PUBLISH)