

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1615-14

**WILLIAM SMITH, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE THIRTEENTH COURT OF APPEAL
### NUECES COUNTY

RICHARDSON, J., filed a dissenting opinion in which MEYERS, JOHNSON, and ALCALA, JJ., joined.

### DISSENTING OPINION

Respectfully, I disagree with the majority's holding that appellant failed to preserve his Fourth Amendment challenge to the warrantless blood draw. I would hold that appellant did preserve error and that the appellate court's decision to reverse his conviction in accordance with *Missouri v. McNeely*[1] should be affirmed.

*Missouri v. McNeely* was decided by the U.S. Supreme Court in April of 2013. This Court's opinion interpreting *McNeely*, *Villarreal v. State,* was handed down in November of

---

[1] 133 S. Ct. 1552 (2013).

2014.[2]  Appellant's case was tried in September of 2011, before review was granted in *Villarreal*, which was in March of 2014.  Even without guidance from *McNeely* and *Villarreal*, appellant's defense counsel argued to the trial court judge that his client's Fourth Amendment rights had been violated by the warrantless blood draw.  He objected to the admission of the blood-draw kit, State's Exhibit 2, and he sought an instructed verdict, in part, on that basis.  The trial court nevertheless admitted State's Exhibit 2, despite indicating a willingness to "carry" appellant's constitutional challenge.  After denying appellant's motion for instructed verdict, the trial judge found appellant guilty of felony DWI.  Appellant's blood alcohol content weighed heavily in favor of the trial judge's decision.  Ultimately, appellant was sentenced to 25 years in prison.

On direct appeal, the Thirteenth Court of Appeals reversed appellant's conviction in light of the Supreme Court's decision in *Missouri v. McNeely*.[3]  The appellate court held that "the warrantless search of appellant's blood was conducted in violation of his Fourth Amendment rights."[4]  The majority reverses the decision of the Thirteenth Court of Appeals, deciding that, because appellant failed to obtain a ruling on his Fourth Amendment complaint, he failed to preserve error.  I, however, would hold that the trial court implicitly

---

[2] 475 S.W.3d 784 (Tex. Crim. App. 2014) (reh'g granted Feb. 25, 2014; op. on denial of reh'g Dec. 16, 2015).

[3] *Smith v. State*, No. 13-11-00694-CR, 2014 WL 5901759, at *1 (Crim. App.—Corpus Christi/Edinburg Nov. 13, 2014).

[4] *Id.*

ruled against appellant's Fourth Amendment challenge by admitting the actual blood-draw

kit into evidence, (which formed the basis of the expert witness's testimony as to what

appellant's blood alcohol content was), and by strongly considering the blood-draw evidence

in finding appellant guilty.

## A.      Preservation of Error

To preserve error for appellate review under Texas Rule of Appellate Procedure

33.1(a), the record must show that (1) the complaining party made a timely and specific

request, objection, or motion; and (2) the trial judge either ruled on the request, objection,

or motion (expressly or implicitly), or he refused to rule and the complaining party objected

to that refusal.[5]   There are two main purposes behind requiring a timely and specific

objection.  First, the judge needs to be sufficiently informed of the basis of the objection and

at a time when he has the chance to rule on the issue at hand.  Second, opposing counsel must

have the chance to remove the objection or provide other testimony.[6]  The preservation rule

"ensures that trial courts are provided an opportunity to correct their own mistakes at the

most convenient and appropriate time–when the mistakes are alleged to have been made."[7]

We recently observed in *Douds v. State*, that "in resolving questions of preservation of error,

---

[5] *Geuder v. State*, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003) (citing to TEX. R. APP. P. 33.1(a)).

[6] *Garza v. State*, 126 S.W.3d 79, 82 (Tex. Crim. App. 2004) (citing to *Zillender v. State*, 557 S.W.2d 515, 517 (Tex. Crim. App. 1977)).

[7] *Hull v. State*, 67 S.W.3d 215, 217 (Tex. Crim. App. 2002).

we may not consider arguments in isolation, but we instead must look to the context of the entire record."[8]

In a jury trial, by affording the judge an opportunity to rule on an objection before the evidence is admitted, he is able to decide whether the evidence is admissible, and if the judge decides the evidence is inadmissible, the jury is shielded from hearing it. This is critical since, in a jury trial, the judge cannot "unring the bell" that the jury just heard. However, in a bench trial, the judge must hear the evidence in order to decide on its admissibility. In a bench trial, a judge is presumed to disregard inadmissible evidence in deciding on the merits of a case. Thus, the bell *can* be "unrung":

> [T]he judge assumes dual roles: He acts as a judge in ruling on the admissibility of the evidence, and he acts as a juror in weighing the credibility of the evidence. Consequently, the time at which a motion is re-urged or a ruling is obtained is not as crucial, because the judge, as fact-finder, is aware of the substance of the motion regardless of when the defendant finally argues it.[9]

---

[8] *Douds v. State*, 472 S.W.3d 670, 674 (Tex. Crim. App. 2015). Although this Court held in *Douds* that the appellant had not preserved error, *Douds* is distinguishable. *Douds* involved the issue of whether the specificity requirement for preservation had been met. In *Douds*, we held that the appellant's constitutional complaint "would not have fairly placed the trial court on notice of any argument that an officer acting pursuant to the statute's authority is additionally required by the Fourth Amendment to obtain a warrant prior to conducting a blood draw." We therefore concluded that "the trial court would not have been placed on notice as to appellant's constitutional complaint and would not have had any opportunity to rule on it." *Id.* at 677.

[9] *Garza v. State*, 126 S.W.3d at 82-83.

Therefore, in a jury trial, the timing of an objection and a ruling on that objection is much more important than in a bench trial.[10]

**B.      Appellant's Challenge To The Warrantless Blood Draw**

The State's first witness at trial was the officer who stopped appellant and administered the standard field sobriety tests. Officer Anguiano testified that, because he had probable cause to believe that appellant had two previous convictions for DWI, he was authorized by statute to conduct a mandatory blood draw. On cross examination, appellant's counsel asked the officer if he had "an order from a judge" to conduct the mandatory blood draw, and the officer replied that he did not because he was statutorily mandated to take appellant's blood.

The next witness to testify was Emily Bonvino, a forensic scientist for the Texas Department of Public Safety. The following excerpt from the trial record reflects that appellant's objection to the admission of the blood-draw kit, which supported Bonvino's expert opinion regarding appellant's blood alcohol content, was sufficiently timely and specific, particularly since this was a bench trial.

> [Prosecutor]:      I'm going to hand you what's been previously marked for identification as State's Exhibit No. 2. Do you recognize that?
>
> [Bonvino]:      Yes, I do.

---

[10] *Id.*

[Prosecutor]: And what is it?

[Bonvino]: It is a blood box, blood tube mailer box that has a blood tube in it.

* * *

[Defense Counsel]: I'm going to object to testifying about this vial. It's not in evidence, Your Honor.

[Prosecutor]: Setting the predicate to introduce it into evidence, Your Honor.

[Defense Counsel]: We're going to go ahead and – well, we'll wait until it's admitted, I guess, to object.

[Trial Judge]: Okay.

* * *

[Prosecutor]: Did you follow the protocol for testing the blood using that machine?

[Bonvino]: Yes, sir.

[Prosecutor]: Okay. And what were the results of our [sic] analysis?

[Bonvino]: The results of this analysis were that the sample contained .21 grams of alcohol per 100 milliliters of blood.

* * *

[Prosecutor]: And at this time, the State seeks to introduce State's Exhibit No. 2 into evidence.

[Trial Judge]: All right.

[Defense Counsel]: Your Honor, I'm going to go ahead and object. There's no order for a mandatory blood draw that we know of that's in evidence. . . .

\* \* \*

[Trial Judge]: All right, let's start from the beginning.

[Defense Counsel]: Okay. No order for mandatory blood draw is my first [objection].

[Trial Judge]: Okay. Well, that part is true.

\* \* \*

[Defense Counsel]: . . . [Y]ou would need an order from the officer, and we don't have the order from the officer in evidence." That's my understanding. . . . I think that you're correct that 724.012 doesn't specify a written order. That's – that's the way it appears.

[Trial Judge]: Yeah, it says, "One or more specimens of breath or blood may be taken if the person is arrested," which they were arrested, "and at the request of the peace officer having reasonable grounds to believe the person while op – intoxicated while it [*sic*] was operating a motor vehicle in a public place" – yeah, and then – and then it goes on, and the, you know, that he can – he can voluntarily comply with the request, but then –

[Defense Counsel]: Having – having admitted that, it doesn't appear that the statute requires –

[Trial Judge]: It doesn't require.

[Defense Counsel]:   – a written order.  I'm – I would submit my objection, Your Honor, on constitutional grounds, and that it should be inferred from the statute that there should be a written order.

[Trial Judge]:   You're making a constitutional challenge?

[Defense Counsel]:  Yes, Your Honor.  I believe, you know, given the fact that the claimant is – is deserving of a right to due process of law, you know, substantive procedural and, in fact, that – and in fact, that there is no order signed.

[Trial Judge]:   By a magistrate or a judge.

[Defense Counsel]:   – by a magistrate, and there's – and additional, no order signed by even the police officer, Your Honor.

[Trial Judge]:   Well, I – the police officer doesn't have any authority to sign an order, but a magistrate or a judge brings up an interesting issue.

[Prosecutor]:   Well, I mean, the officer operated under the laws of the State –

[Trial Judge]:   No, no, no, clearly, clearly the legislature allows for this, okay, but that doesn't mean that the law is constitutional.

[Prosecutor]:   This is true.

[Trial Judge]:   *So you're making, I guess, a Fourth Amendment search and seizure –*

[Defense Counsel]:  *Yes, sir.*

[Trial Judge]:   *– constitutional challenge.*

[Defense Counsel]: Yes, Your Honor, I am. I mean, in this particular case, it's – to me it's rather aggregious [*sic*]. There's nothing in the evidence that shows that he didn't have the time to get an order from the – from a judge or a magistrate. He went ahead and did it, apparently, orally in – in addition, even though the Court is of the opinion that that in itself is not –

[Trial Judge]: I mean, he followed the statute.

[Defense Counsel]: He did.

[Trial Judge]: The only question is whether 724.012 is constitutional, whether it passes the muster of the Federal Constitution.

[Defense Counsel]: I didn't see – my brief research did not indicate that it had ever been brought up.

[Trial Judge]: Okay. Well, I'll carry that. I'll carry that because I think that's an interesting issue.

(Emphasis added).

The State resumed questioning of Bonvino, and, after she testified that "the blood tube results for this particular case are that the blood tube was for a suspect, William Perry Smith, and that the sample contained .21 grams of alcohol per 100 milliliters of blood," the State again "move[d] to admit State's Exhibit No. 2." The trial court judge then turned to appellant's counsel, who responded as follows:

[Defense Counsel]: Your Honor, we had made a series of objections before, including chain of custody, the evidence of the qualified technician, and the – the constitutional issue regarding the – no order for the blood draw.

The trial judge then stated that, "[i]n terms of the constitutional issue, I'll reserve that – that issue, *but it's admitted at this time.*"

After the State rested, defense counsel moved for an instructed verdict based on several grounds, one of which was that "[d]efendant's blood was illegally seized without Court order and/or written order in violation of due process, his Constitutional right of due process in particular." The trial court denied his motion for an instructed verdict. After both sides rested and argued their case, the trial judge explained that his reason for rendering a guilty verdict was based upon the appellant's high blood alcohol content:

> Well, as I watched the video I think there were some signs of intoxication, but quite frankly, I was surprised when I heard the results of the blood alcohol that Mr. Smith did anywhere near as well as he did on the video. I mean, good, I mean, because it was – I mean, signs of intoxication, but I don't know, was he intoxicated where he lost the normal use of his mental or physical faculties? It was a kind of a close call, quite frankly, at a beyond a reasonable doubt standard; but I mean, the fact of the matter is a .21 is far in excess of .08, so – I mean, the legislature has drawn that as a bright line rule, *so based upon that* I find you guilty of this offense beyond a reasonable doubt. . . [Defense counsel] raised an interesting constitutional question about the fact that the blood draw was taken without a warrant. I'm not sure if this has been litigated or not, but I'm – I'm not certain that the legislature can – can do this or not. I mean, the Fourth Amendment is still the law of the land and regardless of what the State legislature or even Congress does, but you're going to have to do me some research, [Defense counsel], and show me because . . . we're not done with the trial, and I'll consider it certainly.

The court reiterated that he would consider the issue *if* the defense counsel brought him authority on "what the courts have said and how far it's gone up." However, at the conclusion of the trial, the issue had not been addressed again, and the trial judge said that

he considered "the evidence presented at the guilt or innocence phase," and that "[h]e's already been found guilty by this Court."

## C.       The Trial Court's Ruling Was Made Implicitly

Defense counsel's complaints, that there was no consent by appellant to the taking of his blood and that there was no warrant permitting his blood to be drawn, were neither perfectly timed nor expertly articulated. However, the trial court judge and the prosecutor were well aware of the nature of appellant's objections in time to act upon them.[11] And, the majority opinion does not appear to base its decision on the timing or specificity of appellant's objections. Rather, the majority reverses the appellate court's decision on the basis that appellant failed to obtain a ruling on his Fourth Amendment challenge as required by Texas Rule of Appellate Procedure 33.1(a). I would hold, however, that a ruling was made by the trial court judge.

Rule 33.1(a) allows for the trial court's ruling on an objection to be made "implicitly." A trial court's ruling on a matter need not be expressly stated if its actions or other statements

---

[11] When the specific basis for the objection can be determined from the context, a general objection may be enough to preserve error. *Zillender v. State*, 557 S.W.2d 515, 517 (Tex. Crim. App. 1977); *Taylor v. State*, 939 S.W.2d 148, 154-55 (Tex. Crim. App. 1996) (citing to *Cofield v. State*, 891 S.W.2d 952, 954 (Tex. Crim. App. 1994) ("Of critical importance is whether the trial court understood appellant's objection, including the legal basis for the objection. Where the record makes clear that the trial court understood an objection and its legal basis, a trial court's ruling on that objection will be preserved for appeal, despite an appellant's failure to clearly articulate the objection.").

otherwise unquestionably indicate a ruling.[12] In this case, the majority holds that a ruling on a motion for instructed verdict is not the same as a ruling on the admission of evidence. Generally speaking, that may be true. But, based on what transpired here, I would hold that, when the trial judge denied appellant's motion for instructed verdict (which was based, in part, on the unconstitutionality of the warrantless blood draw), and expressly found appellant guilty based upon his blood alcohol content, he was implicitly ruling on appellant's Fourth Amendment challenge. This Court recognized a similar implicit ruling in *Pena v. State*, holding that, "the Brady issue is sufficiently clear from the record, and when the trial judge denied appellant's motion for new trial, he was implicitly ruling on the Brady claim."[13] In this case, although the trial court judge promised to "carry" appellant's Fourth Amendment objection, the judge admitted the evidence and clearly relied on it as a basis for his finding of guilt. Therefore, a ruling was made.

It is true that there is nothing in the record indicating that defense counsel responded to the trial judge's invitation to provide him case law on the issue. But I do not interpret this as a failure to obtain a ruling from the trial court. I read the trial judge's promise—that he will "consider" the issue *if* counsel brings him case law on that issue—as a promise to

---

[12] *Montanez v. State*, 195 S.W.3d 101, 104 (Tex. Crim. App. 2006) (quoting *Rey v. State*, 897 S.W.2d 333, 336 (Tex. Crim. App. 1995)).

[13] 353 S.W.3d 797, 809 (Tex. Crim. App. 2011).

*re*consider his decision finding appellant guilty based on the blood alcohol evidence. A promise to reconsider a ruling is not the same as not ruling.

I agree with the decision reached by the Thirteenth Court of Appeals. Therefore, respectfully, I dissent.

FILED:    June 8, 2016

PUBLISH