**Juan Carlos MORENO, Appellant,**

v.

**The STATE of Texas, Appellee.**

Nos. 14–99–01369–CR to
14–99–01372–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Feb. 1, 2001.

Dixie Lee Pritchard, Houston, TX, for appellants.

Carmen Castillo Mitchell, Houston, TX, for appellees.

Panel consists of Chief Justice MURPHY, Justices HUDSON and AMIDEI[1].

## PLURALITY OPINION

MAURICE AMIDEI, Justice (Assigned).

Appellant was convicted by a jury for the offenses of murder and three counts of aggravated assault with a deadly weapon. *See* TEX. PEN.CODE ANN. §§ 19.02(b), 22.02(a) (Vernon 2000). As punishment for the murder and three assault convictions, the jury sentenced appellant to confinement terms of thirty years, seven years, three years, and three years, respectively, in the Institutional Division of TDCJ. In a consolidated appeal, appellant now raises four issues for review. For the reasons set out below, we affirm the judgment of the trial court.

---

1. Former Justice Maurice Amidei sitting by assignment.

## Background

On the evening of January 23, 1999, Todd Gregory invited a number of friends to his parent's trailer home for a birthday celebration. At some point early in the evening, a fight broke out among party guests Tim Rodriguez and Lupe Salinas. After Gregory and some others stopped the fight, Tim left the party along with Paul Rodriguez and Jeremy McAdams. Roughly forty-five minutes later, Tim, Paul, and Jeremy, in addition to about nine other schoolboys including Adrian Garza, returned to Gregory's trailer home in search of a fight. As police sirens began to wail in the distance, however, this truck-load of agitators, in addition to most of the party guests, fled Gregory's party. The remaining guests, Gregory, Jason Ford, Aaron Stanley, Donnie Cobb, Thomas Penick, Thomas Rankin, and Patrick O'Brien, all went to Gregory's backyard and talked.

After fleeing the party, Garza went to appellant's home in search of a gun. Appellant told Garza that he didn't own a gun; however, they later borrowed a .22 caliber rifle from a friend who drove them back near Gregory's trailer home. Once at the trailer park, appellant and Garza exited the truck and observed, from a distance, the young men talking in Gregory's back yard. Moments later, appellant fired six or seven shots in the vicinity of the young men in Gregory's back yard. One of the young men in the yard was hit in the head and died, while Gregory was hit in the leg, hand, and hip. Appellant and Garza then fled the scene and returned home. Police later arrested appellant, who confessed that he fired the shots, albeit not intending to hit anyone but only to scare the victims. A jury later found appellant guilty of murder and three aggravated assaults. Appellant now raises four issues for review. We will affirm.

## Victim Impact Testimony

■ In his first issue, appellant argues that the trial court erred by admitting irrelevant victim impact testimony during the punishment phase of his trial. The State counters by arguing that appellant failed to preserve this issue as his trial objection did not comport with his issue raised on appeal. To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. *See* TEX. R.APP. P. 33.1(a)(1); *Mosley v. State,* 983 S.W.2d 249, 265 (Tex.Crim.App.1998). If a party fails to do this, error is not preserved, and the complaint is waived. *See* TEX.R.APP. P. 33.1(a); *Taylor v. State,* 939 S.W.2d 148, 155 (Tex.Crim.App.1996). Likewise, where the trial objection does not comport with the issue raised on appeal, no error is preserved for appellate review. *Banda v. State,* 890 S.W.2d 42, 62 (Tex.Crim.App.1994).

■ After careful review of the record, we find that appellant's objection at trial preserved his relevancy issue on appeal. During the punishment phase of the trial, the State asked the deceased's grandmother what effect the murder had on her. The following then transpired between the witness, the prosecuting attorney, and appellant's counsel:

Witness: Well, its just a heartbreaker. And our son, Jim, Tommy's uncle who—

Prosecution: Let me ask you the effect on Jim. What about Tommy's uncle?

Counsel: Judge, she's asking her to tell about the effect on somebody else. That's going to be hearsay.

Court: I think she can testify to what she's observed but not what somebody has told her.

Counsel: Let the record reflect our objection is to her talking about the effect on somebody else, if that person is not here to testify to what the effect is.

Court: Overruled, but with the understanding that you can only testify

about things you actually observed yourself, not what somebody else told you.

Witness: All Right. Our son, Jim, was not well and he was badly in depression. And after this, he got [ten] times worse.

Prosecution: And did you observe that personally?

Witness: Oh, yes. And then he took his own life. [W]e have had a double whammie.

Counsel: Excuse me, Judge. I object. I object. I don't have any choice, Judge, but to move for a mistrial after a statement like that.

Court: Overruled.

Counsel: Judge, we ask [that] you first instruct the Jury to disregard that. Its not related. And secondly, if you do, then we ask for a mistrial.

Court: Its overruled.

Based on the record, we find that appellant preserved his relevancy issue for appeal. Counsel for appellant initially couched his objection in terms of hearsay. However, after the witness testified that the deceased's uncle committed suicide, Counsel again objected, arguing that such testimony was "not related." While a more proper objection would have been that the testimony was not relevant, we feel that the grounds for the objection are apparent from the context of the objection and motion for mistrial.

■ Having found that appellant preserved his relevancy issue, we must now determine if the court's failure to instruct the jury to disregard the victim impact testimony was error. With respect to evidence and testimony, the issue of relevance is left to the trial court's discretion and will not be reversed absent an abuse of discretion. *Ford v. State,* 919 S.W.2d 107, 115 (Tex.Crim.App.1996). An abuse of discretion occurs when the court's ruling was outside the zone of reasonable disagreement. *Id.*

■ In non-capital felony cases, the State may present evidence "as to any matter that the court deems relevant to sentencing." *See* Tex.Code Crim. Proc. Ann. art. 37.07 § 3(a) (Vernon Supp.2000). Where such evidence constitutes victim impact testimony, the Court of Criminal Appeals has held that relevancy depends upon whether the testimony has "some bearing on the defendant's personal responsibility and moral guilt." *Stavinoha v. State,* 808 S.W.2d 76, 79 (Tex.Crim.App. 1991). Stated differently, the relevance of victim impact testimony in a non-capital felony case requires that such testimony have a "close, direct link to the circumstances of the case." *Brooks v. State,* 961 S.W.2d 396, 399 (Tex.App.—Houston [1st Dist.] 1997, no writ).

In *Stavinoha,* the defendant, a priest, pled guilty to the offense of aggravated sexual assault of a nine year-old parishioner. *See Stavinoha* 808 S.W.2d at 77. During the punishment phase, the trial court admitted victim impact testimony from a psychologist detailing the mental trauma suffered by complainant's mother as a result of the defendant's act. *Id.* On appeal, the Court upheld this testimony as relevant, reasoning that, because appellant had cultivated the trust of complainant's mother and understood her vulnerabilities as a single parent, he could easily have anticipated the impact his betrayal of trust would have on her. *Id.* at 79.

Subsequently, the First Court of Appeals reached a similar result in *Brooks v. State,* also a non-capital felony trial. *See Brooks,* 961 S.W.2d at 401. In *Brooks,* a jury found the defendant guilty of murdering William Wooten, brother of Brenda Williams. During the punishment phase, Williams testified that as a result of her brother's death, she had been suffering from stress and that a physician diagnosed her as being on the verge of a nervous breakdown. *Id.* at 397. On appeal, the *Brooks* court upheld the impact testimony of the decedent's sister as relevant to sentencing. *Id.* at 401; *see also Peoples v.*

*State,* 874 S.W.2d 804, 807 (Tex.App.— Fort Worth 1994, no writ) (finding that impact testimony relating a mother's anguish as her son died in her arms bore on the defendant's personal responsibility and moral guilt because he should have anticipated this).

Applying this to the present case, we feel that the trial court's admission of victim impact testimony from the deceased's grandmother was a logical extension of *Stavinoha.* Here, we believe that appellant could easily have anticipated the psychological impact of his crime on members of the deceased's extended family. Accordingly, we find that the effect of appellant's crime on the deceased's uncle, as testified to by the deceased's grandmother, was foreseeable to appellant and thus relevant. We overrule appellant's first issue.

### Jury Charge Error In Appellant's Aggravated Assault Cases

Appellant's second issue contains three subissues asserting that the trial court erred in submission of its jury charge on his aggravated assault cases. In his first two subissues, appellant appears to argue that the court's charge was erroneous as it submitted to the jury the definition of recklessness and transferred intent. We need not concern ourselves with untangling these subissues, however, as appellant fails to cite legal authority for such challenges. *Williams v. State,* 937 S.W.2d 479, 486 (Tex.Crim.App.1996).

■ In appellant's final jury charge subissue on his aggravated assault cases, he contends that the court erred in denying his request for an instruction on the lesser included offense of assault. Under Texas law, an offense is a lesser included offense if:

(1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;

(2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;

(3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or

(4) it consists of an attempt to commit the offense charged or an otherwise included offense.

TEX.CODE CRIM. PROC. ANN. art. 37.09 (Vernon 1981).

■ Determining the propriety of a lesser-included-offense instruction requires a two-step analysis. *Rousseau v. State,* 855 S.W.2d 666, 672–73 (Tex.Crim.App. 1993). First, the lesser-included offense must be included within the proof necessary to establish the offense charged. *Id.* Second, there must be some evidence in the record that would permit a jury to rationally find that if the defendant is guilty, he is guilty of only the lesser offense. *Id.* In reviewing a court's decision not to give a charge on a lesser offense, we examine all of the evidence presented at trial, regardless of whether it is credible, controverted, or conflicting. *Lugo v. State,* 667 S.W.2d 144, 147 (Tex.Crim.App. 1984).

In our analysis, we focus on only the second element because the State does not contest that assault is within the proof necessary to prove the aggravated assault alleged in appellant's case. TEX. PEN.CODE ANN. § 22.01(a) (Vernon Supp.2000). A person commits an assault if he intentionally, knowingly, or recklessly causes bodily injury to another. TEX. PEN.CODE ANN. § 22.01(a)(1) (Vernon Supp.2000). An assault becomes aggravated if the actor "uses a deadly weapon during the commission of the assault." Id. § 22.02(a)(2). Consequently, a lesser included offense instruction was required if the record contains some evidence that appellant did not exhibit a deadly weapon.

In the instant case, the state adduced uncontradicted evidence that appellant

used a rifle during the course of committing the aggravated assaults. Because of the existence of this evidence at trial, appellant cannot meet the second prong of *Rousseau* as any rational jury could find him guilty of the charged offense—aggravated assault. Accordingly, we find that the trial court did not err in refusing appellant's request for an instruction on the lesser included offense of assault. We overrule appellant's second issue for review.

### *Jury Charge Error In Appellant's Murder Case*

■ Appellant's third issue contains four subissues asserting that the trial court erred in submission of its jury charge on his murder case. In the first three subissues, appellant argues that the trial court erred by refusing to submit to the jury the lesser included offenses of aggravated assault, criminally negligent homicide, and deadly conduct as part of the murder charge. Appellant's fourth subissue asserts that the trial court erred by including transferred intent language in the jury charge of his murder case. We disagree.

As stated previously, a court determines the propriety of a lesser-included-offense instruction by using a two-step analysis. *Rousseau v. State*, 855 S.W.2d 666, 672–73 (Tex.Crim.App.1993). First, the lesser-included offense must be included within the proof necessary to establish the offense charged. *Id.* Second, there must be some evidence in the record that would permit a jury to rationally find that if the defendant is guilty, he is guilty of only the lesser offense. *Id.*

With this in mind, we turn to appellant's complaint that the court erred by not submitting a lesser included charge on aggravated assault, criminally negligent homicide, or deadly conduct. In pertinent part, Texas law provides that a person commits murder if he "(1) intentionally or knowingly causes the death of an individual; and (2) intends to cause serious bodily injury

and commits an act clearly dangerous to human life that causes the death of an individual." TEX. PEN.CODE ANN. § 19.02(b) (Vernon 1994). Texas courts have recognized that criminally negligent homicide and aggravated assault are lesser-included offenses of murder. See, e.g., *Jackson v. State*, 992 S.W.2d 469, 475 (Tex.Crim.App. 1999) (manslaughter); *Saunders v. State*, 840 S.W.2d 390, 391 (Tex.Crim.App.1992) (criminally negligent homicide). However, deadly conduct covers highly dangerous and intentional acts that fall short of harming another. TEX. PEN.CODE ANN. § 22.05 (Vernon 1994); *Walker v. State*, 994 S.W.2d 199, 203 (Tex.App.—Houston 1999, pet ref'd); *Ramirez v. State*, 976 S.W.2d 219, 227 (Tex.App.—El Paso 1998, pet. ref'd); *Mares v. State*, 903 S.W.2d 419, 422 (Tex.App.—Eastland 1995, pet. ref'd). Moreover, if injury actually occurs from appellant's deliberate conduct, the act of shooting towards the victim constitutes more than deadly conduct. *See Ramirez*, 976 S.W.2d at 227.

Here, the evidence adduced at trial clearly showed that appellant killed complainant by firing a gun. Therefore, the lesser included offense of deadly conduct is not included within the proof necessary to establish murder. Accordingly, appellant has met the first step of the *Rousseau* analysis for the lesser included offenses of aggravated assault and criminally negligent homicide but not deadly conduct.

■ Turning to the second step of the *Rousseau* analysis, we must now determine whether there is some evidence in the record that would permit a jury to rationally find that if the defendant is guilty, he is guilty of only the lesser offenses. The trial record shows appellant acted intentionally, or at the least knowingly, when he aimed his rifle at the group of people the decedent was standing with and "just fired a couple of shots." As a result of this clearly dangerous act, victim was struck in the head and died. Evidence clearly existed, then, to support a conviction for murder. In fact, the only

contrary evidence that this was not an intentional or knowing act, and therefore not murder, is appellant's own assertion that he did not intend to kill anyone. Given the state of the entire record, appellant cannot meet the second prong of Rousseau as any rational jury could find him guilty of the charged offense of murder.

In his fourth subissue, appellant argues that the trial court erred by including transferred intent language in the jury charge. In doing so, however, appellant cites no legal authority for any of his challenges. His contentions, therefore, are inadequately briefed. *Williams v. State*, 937 S.W.2d 479, 486 (Tex.Crim.App.—1996). Accordingly, we overrule appellant's third issue.

### Case Consolidation Issues

■ In his last issue, appellant complains that the trial court erred by refusing to consolidate, into a single case, all of the indictments brought by the numerous complainants in this cause. In addition, appellant also contends that the trial court erred by admitting, in the consolidated cases, evidence from the unconsolidated cases. We disagree.

■ We first address appellant's contention that the trial court erred by refusing to consolidate all of his indictments into a single cause. Section 3.02 of the Texas Penal Code provides that "[a] defendant may be prosecuted in a single criminal action for all offenses arising out of the same criminal episode." The State is not required, however, to consolidate the prosecutions of multiple offenses arising out of the same criminal episode. *See Cotton v. State*, 836 S.W.2d 757, 760 (Tex.App.— Tyler 1992, no pet .). Appellant's first subissue fails.

■ Appellant next argues that the trial court erred by admitting, in the trial of the consolidated cases, the testimony of a complainant from an unconsolidated case. Specifically, appellant complains of the admission of testimony of Patrick O'Brian,

one of the men standing in the group shot at by appellant. Because O'Brian was one of the aggravated assault complainants not consolidated into the present case, appellant contends that his testimony of the events of the shooting constitutes extraneous offense evidence. In a pre-trial hearing, the court considered both this objection and the State's response. The court then pronounced that it would allow appellant to urge the objection at trial included within the proof necessary to establish the offense charged at which point it would rule on the objection. Nevertheless, when O'Brian subsequently took the stand and offered the complained of testimony, appellant failed to object. Therefore, appellant failed to preserve this complaint for appeal. Tex.R.App. P. 33.1(a). We overrule appellant's final issue for review and affirm the judgment of the trial court.

HUDSON, Justice, concurring.

The direct and collateral effects of a crime are relevant at the punishment phase of a trial so long as they have "some bearing on the defendant's personal responsibility and moral guilt." *Stavinoha v. State*, 808 S.W.2d 76, 79 (Tex.Crim.App. 1991). Crime, however, like sin, is pervasive. Every misdeed ripples through society causing a physical, emotional, or economic impact upon the victim, his family, his friends, his classmates, his co-workers, his neighbors, his acquaintances, etc. As the circle grows larger, the observable impact may lessen, but the effect of the transgression is only diffused, never extinguished. Thus, "tracing" the impact of a crime is fraught with practical difficulties.

Finitude permits us neither the time nor insight to trace the ramifications of a crime beyond its most immediate and obvious consequences. Here, the record shows that *prior* to the murder, the victim's uncle was suffering from significant depression. *After* the murder, his depression increased. Eventually the victim's uncle committed suicide. The State asks us to infer from this sequence of events that the uncle's preexisting depression was aggra-

vated by the loss of his nephew. However, the victim's uncle was already suffering from depression and the record does not reveal: (1) the cause of the preexisting depression; (2) whether that cause intensified prior to the suicide (i.e., financial difficulties, lack of self-esteem, physiological impairment, etc.); (3) whether the uncle was close to his nephew, (4) whether he was emotionally distraught on account of the murder; or (5) the length of time between the victim's murder and the uncle's suicide. Given the meager record presented here, I believe it was error to suggest the uncle's suicide was a result of the complainant's murder.

I also believe, however, that the error was harmless. *See* TEX.R.APP. P. 44.2(b). First, the witness did not say the victim's murder caused the subsequent suicide (although the cause and effect can certainly be inferred from her testimony). Second, the comment was not responsive to the prosecutor's question. Third, the witness did not again mention the suicide. Fourth, the prosecutor did not allude to the victim's uncle or his suicide during final argument. Fifth, although the State's attorney asked for a life sentence, the jury assessed appellant's punishment at only thirty years in the penitentiary. Finally, in light of the premeditated nature of the shooting, the punishment assessed by the jury appears neither harsh nor vindictive.

Believing the error did not have a substantial or injurious effect on the jury verdict, I concur in the judgment of the court.

MURPHY, Chief Justice, dissenting.

I dissent from the majority's judgment because I believe that the victim impact testimony allowed in this case had no bearing upon appellant's moral blameworthiness because it lacked foreseeability. At the punishment phase of the trial, the victim's grandmother testified as to the impact of the crime upon the victim's uncle, even going so far as to imply that the victim's uncle killed himself as a result of the victim's death. Without a proper predicate establishing the relevance of the testimony from the victim's grandmother, the testimony exceeds the proper scope of victim impact testimony.

Article 37.07, § 3(a) of the code of criminal procedure provides that during punishment, "evidence may be offered by the State and the defendant as to any matter the court deems relevant to sentencing...." TEX.CODE CRIM. PROC. ANN. art. 37.07 (Vernon Supp.2000). In capital felony cases, article 37.071, § 2(a) of the code of criminal procedure contains language almost identical to article 37.07, § 3(a). TEX.CODE CRIM. PROC. ANN. art. 37.071 (Vernon Supp.2000).

During punishment, relevant evidence is information appropriate for the jury to consider in the exercise of its unfettered discretion to assess whatever punishment within the prescribed range it sees fit. *Brooks v. State,* 961 S.W.2d 396, 398 (Tex. App.—Houston [1st Dist.] 1997, no pet.). Victim impact testimony is relevant when it implicates or has bearing on appellant's personal responsibility and moral culpability. *See Ford v. State,* 919 S.W.2d 107, 115 (Tex.Crim.App.1996) (death penalty case in which jury was required to answer a special issue concerning the defendant's personal moral culpability); *Stavinoha v. State,* 808 S.W.2d 76, 79 (Tex.Crim.App. 1991) (non-death penalty case in which the court held that the victim impact testimony had bearing on appellant's moral blameworthiness); *Miller–El v. State,* 782 S.W.2d 892, 896 (Tex.Crim.App.1990) (evidence of degree of injury extending into the future was admissible at punishment because such evidence bore on the defendant's moral blameworthiness).

A number of courts, in both capital and non-capital cases, have determined that evidence of a close relative's emotional scarring was admissible as having bearing upon the defendant's personal responsibility and moral culpability. *See McDuff v. State,* 939 S.W.2d 607, 620 (Tex.Crim.App. 1997) (testimony of sister regarding her

family's inability to properly dispose of her sister's remains, and her fears of going out at night alone as a result of her sister's rape and murder); *Ford,* 919 S.W.2d at 112–16 (testimony of father regarding impact of seeing the scene of the murder, his fear, and his missing his son); *Brooks,* 961 S.W.2d at 397–400 (sister's testimony regarding the murder of her brother and its impact upon her, resulting in her having to seek care from a physician); *Peoples v. State,* 874 S.W.2d 804, 807 (Tex.App.— Fort Worth 1994, pet. ref'd) (testimony of mother regarding her anguish as her son died in her arms). This evidence of emotional scarring has bearing upon the defendant's moral culpability because it is clearly foreseeable. *See McDuff,* 939 S.W.2d at 620. This is not necessarily the case with extended family members. When the victim is a stranger to the criminal, while foreseeable that a mother, father, sister, or brother would feel an impact of the criminal conduct, it is not as foreseeable that aunts, uncles, and grandparents would feel the same impact. That is not to say, however, that the impact of a crime can never reach aunts, uncles, and grandparents. If a proper predicate is laid that establishes a connection between a victim and an aunt, uncle, or grandparent equivalent to the connection that exists between parents and children, or between siblings, the impact upon these persons would be foreseeable, and the testimony would be clearly relevant. Moreover, if the criminal is aware of a special relationship between the victim and an aunt, uncle, or grandparent, the impact of the crime upon these persons would be foreseeable, and their testimony would be clearly relevant. No such evidence exists in the present case.

The testimony in the present case centered around the impact of the murder upon the victim's uncle, who had committed suicide. The record fails to provide any description of the relationship between the victim and his uncle, nor does the record reflect that appellant knew or should have known that his criminal conduct would impact upon the victim's uncle.

The record in our case merely indicates that the grandmother's testimony centered not upon the effect of the murder on her, but rather upon the victim's uncle who committed suicide. Moreover, the record reveals that the victim's uncle, prior to the murder, was "badly in depression." The victim impact testimony in the present case is clearly more tenuous and less foreseeable, than testimony from a brother, sister, mother, or father regarding fear, anguish, and/or depression. Unlike a victim's immediate family members, the emotional scarring of an uncle, or a grandmother, without a proper predicate evincing a close relationship between the uncle or grandmother to the victim, is not as foreseeable, and as such, has no bearing upon the defendant's moral culpability.

Moreover, I can not say that such error was harmless. The victim impact testimony allowed in the present case blamed the appellant for the death of the victim's uncle. Accordingly, the judgment of the trial court should be reversed and remanded for a new sentencing hearing.