Affirmed and En Banc Opinion filed August 10, 2004









Affirmed and En Banc Opinion filed August 10, 2004.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-01101-CR

____________

 

RAUL ORTIZ, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 262nd
District Court

Harris County, Texas

Trial Court Cause No. 893,217

 



 

E N  
B A N C   O P I N I O N

Appellant, Raul Ortiz, was charged by
indictment with murder.  He was convicted
by a jury of the lesser included offense of deadly conduct.  The jury assessed punishment at confinement
for seven years in the Institutional Division of the Texas Department of
Criminal Justice and a fine of $5,000. 
In three points of error, appellant contends the trial court erred (1)
in charging the jury on deadly conduct as a lesser included offense to murder,
(2) in failing to instruct the jury to disregard the State=s improper jury
argument, and (3) in failing to grant a mistrial due to the State=s improper jury
argument.  We affirm.








Cesar Ramos celebrated his sixteenth
birthday at a party held on the front porch of his parents= house.  Invitation to the party was by word of
mouth.  Although Cesar was a minor, his
father permitted him to serve beer and punch Aspiked@ with Everclear.[1]  

Monica Perez, one of Cesar=s friends, arrived
at the party at 6:00 p.m. with several of her friends.  Appellant called Monica on her cell phone
sometime after 9:00 p.m., and she told appellant she was at a party.  Appellant arrived at the party with Miguel
Ortiz, Roger Torres, and Robert Cervantes. 
Later that evening, a fight broke out between two girls.  The fight was gang related, and Christine
Ortuno, a friend of Monica=s, was hit in the
face because she was wearing a red shirt. 
The fight gradually escalated to a number of girls.  During the melee, Cesar=s friend, Anthony
Hadnot, hit a guest, Anita Lopez, in the face when she allegedly attacked his
girlfriend.  Predictably, this spawned
yet another dispute between, Anthony and Miguel Ortiz, who took umbrage at
Anthony hitting a girl.  Miguel then
pulled out a semi-automatic pistol and pointed it at Anthony.  Anthony foolishly told Miguel to shoot the
gun.  Miguel fired the gun in the air.

Rather than being intimidated by Miguel,
the crowd grew angry and began pressing in on him.  Perceiving they had overstayed their welcome,
appellant, Miguel, Roger, and Robert retreated to appellant=s car.  As appellant drove away from the party, his
car was showered with bottles thrown by the crowd.  Appellant drove approximately one or two
blocks, stopped the car, opened the driver=s side door,
pulled out a pistol, and fired several shots. 
Appellant then closed the door and drove away.








As the car drove away, Cesar noticed his
younger brother, Edwin, laying on the ground. 
Edwin told Cesar that someone had hit him and raised his shirt.  Cesar saw a Alump@ on the surface of
Edwin=s stomach.  Cesar and another person helped Edwin into
the house where they laid him on a sofa. 
When Edwin started throwing up, they turned him over and discovered a
bullet hole in his back.  An ambulance
was summoned, and although Edwin was still alive when the patrol officers
arrived, he died shortly after being transported from the scene.  The medical examiner testified that Edwin
died of a gunshot wound to the chest. 
The bullet entered on the lower part of the left side of the chest,
almost towards the back, lodging just under the skin on the right side of the
chest.  

The patrol officers recovered 3 spent
nine-millimeter casings (two Eldorado casings and one Winchester) in the street
about a block from the Ramos house.  The
officers also held those individuals who were still at the scene and separated
witnesses for the purpose of taking statements. 
Officer Todd Miller of the Houston Police Department homicide division
was able to develop a suspect.  After
obtaining appellant=s name, Miller compiled a photo array,
which included appellant=s picture. 
Miller showed the photo array to Cesar and Monica; both identified
appellant.  Miller then obtained an
arrest warrant for appellant.  Appellant
was arrested several days later at school. 


After being advised of his legal rights,
appellant waived those rights and agreed to make a formal statement.  Appellant told police that when several
people started throwing bottles at his car, Miguel pulled out a gun and pointed
it at someone.  Miguel then got in the car.  When people continued throwing bottles at the
car, Miguel stuck the gun outside the window and fired several shots.  Appellant then drove the car a short distance
away where he stopped.  Appellant said
that after he stopped the car, Miguel fired several more shots from the
car.  Appellant claimed that Miguel was
the only person in the car with a gun.  

Miller then separately interviewed Roger
Torres and Robert Cervantes, who were in the car with appellant on the night of
the shooting.  Both Roger and Robert told
Miller that appellant also fired shots from the car.  Confronted with this discrepancy, appellant
altered his account of what happened.








In his second statement, appellant
admitted that after stopping the car, he retrieved a gun from under the
seat.  He claims he then fired two shots
into the air.  He reiterated, however,
that Miguel fired his own pistol several more times directly into the crowd.  The police subsequently recovered appellant=s weapon, a 9 mm
High Point, from his home.  Thereafter,
the police also recovered Miguel=s weapon, a 9 mm
Taurus.

The bullet recovered from the body of
Edwin Ramos had insufficient land and groove impressions to positively link it
to a weapon.  However, ballistics tests
eliminated Miguel=s 9 mm Taurus as the murder weapon because
test firings of that pistol produced well defined land and groove impressions
that were not consistent with the faint impressions found on the bullet
recovered from Edwin=s body. 
The only other weapon fired at the scene of the murder was appellant=s 9 mm High
Point.  Test firings of that weapon
revealed that it made only very faint land and groove impressions.  Because the land and groove impressions were
so muted, the State=s firearms examiner was not able to
positively identify appellant=s pistol as the
murder weapon.  However, because Miguel=s weapon could not
have fired the bullet recovered from the victim=s body, circumstances
strongly suggested that appellant fired the fatal shot.

Appellant was charged by indictment with
murder.  Included in the jury charge,
however, was an instruction on the lesser included offense of deadly
conduct.  In his first point of error,
appellant contends the trial court erred in submitting a charge on deadly
conduct because the instruction does not meet the two-pronged test established
in Rousseau v. State, 855 S.W.2d 666, 672 (Tex. Crim. App. 1993).  We find appellant=s contention is
without merit for a variety of reasons.








First, the etiology of the court=s charge is not
contained in the record before us.  The
record contains no suggestion as to why or how the deadly conduct instruction
was included in the charge, and we have no way of discerning whether the
instruction was requested by appellant=s counsel, the
prosecutor, or was included sua sponte by the trial court.  It is well-established that a defendant
cannot complain of error where he requested the charge given to the jury.  Gutierrez v. State, 659 S.W.2d 423,
424 (Tex. Crim. App. 1983); Hernandez v. State, 808 S.W.2d 536, 545
(Tex. App.CWaco 1991, no pet.); Henry v. State,
732 S.W.2d 443, 444 (Tex. App.CBeaumont 1987, no
pet.).  Thus, if appellant
requested the charge at issue, no error is presented.  Accordingly, appellant has failed to develop
a record demonstrating the error being complained of on appeal.

We are aware that the Texas Court of
Criminal Appeals has, in very broad language, absolved the defendant of
presenting a record that demonstrates error. 
Rowell v. State, 66 S.W.3d 279, 281 (Tex. Crim. App. 2001).  There the court observed, Athe appellant once
bore the burden of presenting a record that demonstrated error, but the rule
that so burdened him was revised in 1997.@  Id.  
Thus, the Acurrent Rules do not assign a burden to
either party, so the appellant could not have failed to satisfy it.@  Id. 
Despite this sweeping pronouncement, we do not believe the court
intended so drastic a change in our jurisprudence as the literal language of
its holding would suggest.








Under Rule 50(d) of the former rules of
appellate procedure, the Aburden [was] on the appellant, or other
party seeking review, to see that a sufficient record [was] presented to show
error requiring reversal.@[2]  Although simple in its terms, the rule was
routinely cited for two distinctly different principles: (1) the party seeking
review had the burden to develop a record demonstrating error in the
court below, and (2) the party seeking review had the burden to deliver
a record demonstrating error in the court below.[3]  It is clear under the new rules of appellate
procedure that the Atrial and appellate courts are jointly
responsible for ensuring that the appellate record is timely filed.@  Tex.
R. App. P. 35.3(c).  Accordingly,
the appellant is absolved of his former burden of transporting, delivering,
filing, etc. the record with the appellate court.  However, it is inconceivable that the
appellant has also been relieved of his burden of developing a sufficient
record in the trial court to demonstrate reversible error on appeal.  For example, the new rules of appellate
procedure still require preservation of error, i.e., Athe record must
show . . . by timely request, objection, or motion@ that the trial
court erred.  Tex. R. App. P. 33.1. 
The rules also provide a procedure for perfecting a formal bill of
exception.  Tex. R. App. P. 33.2. 
Further, the Rules of Evidence require the proponent of evidence to make
an offer of proof when the trial court excludes the evidence at issue.  Tex.
R. Evid. 103.  None of these rules
would be necessary if an appellant could obtain a reversal by making
hypothetical assertions that error, not affirmatively reflected in the record, might
have been committed in the court below.








Accordingly, we hold the repeal of the
former rules of appellate procedure does not absolve appellant of his burden of
presenting a record to show error requiring reversal insofar as he is required
to develop the record to show the nature and source of an error and, in
some cases, its prejudice to him.  Here,
appellant has failed to present us with a record reflecting which party
requested the instruction at issue. 
Because it is possible that appellant requested the instruction, no
error is presented.  When a defendant
requests a charge, and the court submits it, he can not complain of that charge
on appeal.  Tucker v. State, 771
S.W.2d 523, 534 (Tex. Crim. App. 1988). 
Even if the charge is later found to be erroneous, the accused cannot
first invite error and then complain about it on appeal.  Id. 
Thus, the record does not affirmatively demonstrate error requiring
reversal.

Similarly, appellant has failed in his burden of presenting
a record demonstrating the existence of Aegregious harm@ as required for
reversal by Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App.
1984).  Here, appellant did not object to
the lesser included offense chargeCin fact, he
affirmatively approved it.  Prior to
presenting the charge to the jury, the trial court made the following inquiry
of appellant=s counsel:

THE COURT:  . . . Mr. Lindeman [appellant=s counsel], I had also given you
the proposed charge of the Court on guilt or innocence, have you had sufficient
time to review it, sir?

MR. LINDEMAN:  I have, Your Honor.

THE COURT:  You have any objections to the charge?

MR. LINDEMAN:  Your Honor, I=d like to see if the wording could
be added into the charge relating to 3822 in that it=s not so much on the issue on C 

[The court and the parties
discussed whether appellant was entitled to an instruction under Article 38.22
of the Code of Criminal Procedure regarding coercion of his statement by the
police.]

MR. WINDHAM [the State=s attorney]:  I believe that matter is covered in the very
first paragraph where it asks that: AIf it appears that the same was freely and voluntarily made
without compulsion or persuasion.@  And I think for the
Court to add the language that counsel is asking [for] would be a comment by
the Court on the weight of the evidence.

THE COURT:  Yes, I agree with the State, it would be a
comment.  You can=t have something done voluntarily
if you=re coerced into doing it.  So that request is denied, sir.

MR. LINDEMAN:  None other, Your Honor, I=m fine with it other than that.








THE COURT:  So, there=s no additional requests and no objections to the charge? 

MR. LINDEMAN: 
Correct, Your Honor.

When there is jury‑charge error,
whether objected to or not objected to, the standard for assessing harm is
controlled by Almanza v. State, 686 S.W.2d 157 (Tex. Crim. App.
1985).  Bluitt v. State, 137
S.W.3d 51, 53 (Tex. Crim. App. 2004).  Because
an affirmative denial of objection is not a timely objection, it must be
governed by the rules for failure to object. 
Id.  Accordingly, appellant
may raise such unobjected‑to charge error on appeal, but may not obtain a
reversal for such error unless it resulted in egregious harm.  Id.

Here, the evidence shows appellant and
Miguel both fired 9 mm pistols.  The
victim was struck by a bullet that could not have been fired from Miguel=s weapon.  Circumstantial evidence, therefore, strongly
suggests the fatal bullet was fired by appellant.  Appellant was indicted for the first degree
felony of murder.  Although the evidence
would have supported a conviction for murder, the inclusion permitted the jury
to convict appellant of the third degree felony of deadly conduct.  The charge was thus beneficial to
appellant.  Accordingly, no Aegregious harm@ and, thus, no
reversible error is presented.    

Finally, even if we were to consider the
merits of appellant=s argument, his contention fails because
deadly conduct is, in fact, a lesser included offense of murder.  Appellant asserts the deadly conduct
instruction was error because the offense did not meet the two-pronged test of Rousseau.  In other words, the State failed to show that
(1) deadly conduct is included within the proof necessary to commit murder, and
(2) there is some evidence that, if guilty, appellant was guilty only of deadly
conduct.  We disagree.








The first prong of the Rousseau
test is jurisdictional.  It is well
settled that a valid indictment or information is essential to a trial court=s jurisdiction in
a criminal case.  Garcia v. Dial,
596 S.W.2d 524, 527 (Tex. Crim. App. 1980). 
Thus, a court has no authority to convict a defendant except for the
offense charged or some lesser included offense of the crime charged.  McLeod v. State, 56 S.W.3d 704, 708
(Tex. App.CHouston [14th Dist.] 2001, no pet.).   An offense is a lesser included offense if
(1) it is established by proof of the same or less than all the facts required
to establish the commission of the offense charged; (2) it differs from the
offense charged only in the respect that a less serious injury or risk of
injury to the same person, property, or public interest suffices to establish
its commission; (3) it differs from the offense charged only in the respect
that a less culpable mental state suffices to establish its commission; or (4)
it consists of an attempt to commit the offense charged or an otherwise
included offense.  Tex. Code Crim. Proc. Ann. art. 37.09
(Vernon 1981).  The legislature has not
established any other test for inclusion in the charge; rather, juries are
authorized to find a defendant Aguilty of any
lesser included offense.@  Tex. Code Crim. Proc. Ann. art. 37.08
(Vernon 1981) (emphasis added).

The second prong of the test demonstrates
the existence or non-existence of prejudice to the appellant if his request for
a lesser included offense charge is denied. 
When a defendant properly requests a jury instruction, and such
instruction is erroneously denied by the trial court, the error Awill call for
reversal as long as the error is not harmless.@  Almanza v. State, 686 S.W.2d 157, 171
(Tex. Crim. App. 1984).  In short, Athere must be some
harm to the accused.@  Id.  In the context of a request for a charge on a
lesser included offense, this burden is met merely by showing that some
evidence was presented that if guilty, the defendant was guilty only of the
lesser included offense.  Unless such
evidence was presented, the jury could not rationally find the defendant guilty
of the lesser included offense, and there is no harm stemming from exclusion of
the charge.








Conceptually, therefore, the first prong
must be met before granting a lesser included offense instruction; the
second prong must be met before predicating reversible error on the denial
of such an instruction.  Nevertheless,
the Court of Criminal Appeals has held the State must satisfy both
prongs of Rousseau to avoid error in the granting of a request
for a lesser included offense charge.  Arevalo
v. State, 943 S.W.2d 887, 890 (Tex. Crim. App. 1997).[4]  Accordingly, as an intermediate court, we
must consider whether both prongs of Rousseau are satisfied in the
record before us.

Regarding the first prong, appellant
contends deadly conduct can never be a lesser included offense of murder
because it is not included within the proof necessary to establish murder.  Indeed, this court has so held.  See Moreno v. State, 38 S.W.3d 774,
779 (Tex. App.CHouston [14th Dist.] 2001, no pet.).  In Moreno, we held that deadly conduct
is committed by acts Athat fall short of harming another.@  Accordingly, Aif injury actually
occurs from appellant=s deliberate conduct,@ then, ipso
facto, the act constitutes more than deadly conduct.[5]  Of course, this is precisely why deadly
conduct is a lesser included offense of murder, i.e., because Ait differs from
the offense charged only in the respect that a less serious injury or risk of
injury to the same person, property, or public interest suffices to establish
its commission.@  Tex. Code Crim. Proc. Ann. art.
37.09(2).  In addition to being poorly
reasoned, as a plurality opinion, Moreno=s precedential
value is uncertain.  See Cooper v.
State, 67 S.W.3d 221, 224 (Tex. Crim. App. 2002) (holding a plurality
opinion has limited or no precedential value).








Moreover, the principle upon which Moreno
rests, i.e., that deadly conduct is not committed Aif injury actually
occurs from appellant=s deliberate conduct,@ was refuted two
weeks later by this court in Ford v. State, 38 S.W.3d 836 (Tex. App.CHouston [14th
Dist.] 2001, pet. ref=d). 
In Ford, we held that deadly conduct was a lesser included
offense of aggravated assault even though the victim was seriously injured when
he was stabbed or cut by a knife-wielding defendant.  Id. at 844B46.

Under the indictment presented here, appellant was charged
with two different manner and means of committing the offense of murder.  Thus, under the State=s pleadings it was
required to show that appellant either:[6]

(1) intentionally or knowingly

(2) caused the
death

(3) of Edwin
Ramos

(4) by shooting him with a firearm

or

(1) intended to
cause serious bodily injury to Edwin Ramos and

(2)
intentionally or knowingly committed an act clearly dangerous to human life

(3) that caused
the death of Edwin Ramos

(4) namely, shooting him with a firearm

Tex. Pen. Code Ann. ' 19.02(b)(1) &
(2) (Vernon 1994).  In light of the
charge submitted to the jury, the elements of deadly conduct are satisfied here
by showing the defendant:

(1) knowingly








(2) discharged
a firearm

(3) at or in
the direction of

(4) one or more individuals

See Tex. Pen. Code
Ann. ' 22.05(b)(1)
(Vernon 1994).

A firearm is a deadly weapon per se.  Tex.
Pen. Code Ann. ' 1.07(a)(17) (Vernon 1994).  Thus, shooting a firearm at or in the
direction of another person can only be characterized as an act that is clearly
dangerous to human life.  Accordingly,
deadly conduct is distinguished from murder under the facts of this case only
by relieving the State of proving (1) an intentional act and (2) the death of
an individual.  Under the facts and
pleadings presented here, deadly conduct satisfies the first prong of Rousseau
in that it was included in the proof necessary to establish the offense of
murder.[7]  See Tex.
Code Crim. Proc. Ann. art. 37.09.








As for the second prong of Rousseau,
appellant told the police that he fired his pistol two times in the air.[8]  It is unclear from appellant=s statement
whether he fired his weapon straight up, i.e., ninety degrees above the
horizon, or whether he fired his weapon Ain the air@ above the crowd, i.e.,
five or ten or degrees above the horizon. 
Cesar Ramos testified that when appellant=s car stopped, the
driver=s side door
opened, and shots were fired from the vehicle, but no one got out of the
car.  Thus, the circumstances suggest
that if appellant is to be believed, he did not fire straight up, but rather
above the heads of the crowd, i.e., in the direction of one or more
individuals.  Thus, a rational jury could
conclude that appellant did not intend to commit serious bodily injury, but due
to his poor aim or the falling trajectory of a bullet fired a block or more
away, the victim was nevertheless fatally injured.

Accordingly, we find there is some
evidence in the record which, if believed, would show that appellant is guilty
only of the lesser included offense of deadly conduct.[9]  Appellant=s first point of
error is overruled.[10]

In his second and third issues, appellant contends the
trial court erred in failing to instruct the jury to disregard the State=s improper jury
argument after the State commented on his failure to testify and in failing to
grant a mistrial based on the same improper argument.  Police recovered a Lorcin pistol clip in
appellant=s car. 
The clip did not fit either appellant=s High Point or
Miguel=s Taurus
pistol.  Appellant complains of the
following statement by one of the prosecutors during the State=s closing
argument:








We have three guns.  We have a Taurus.  We have the High Point, and we have the
Lorcin.  We know that bullet did not come
from the Taurus.  All the experts said
that.  The Taurus leaves two [sic] clear
markings.  This bullet does not have
those markings on it.  The Taurus is
eliminated.  So that leaves the High
Point or the Lorcin.

Lorcin, there was never a Lorcin
recovered.  Why?

Because there never was a Lorcin in
the car that night.  

How do we know that?

The testimony.  Testimony from the three people you heard
from that were in the car.  If there was
third gun in there the way the fingers are being pointed, you would have heard
about it.  If there=s a Lorcin in that car that could
have been blamed for that killing, Raul would have said it.

MR. LINDEMAN [Appellant=s attorney]:  Objection, Your Honor.  I object to the reference to my client=s failure to testify, and I ask
that the jury be instructed to disregard.

THE COURT:  You=re so instructed.

MR. LINDEMAN:  And I would ask for a mistrial.

THE COURT:  Denied. 

MR. GIESE [State=s attorney]:  Raul=s statements, he
would have said in his statement that somebody fired a gun other than Miguel
and himself.








For a prosecutor=s argument to
violate the defendant=s right against self‑incrimination
and be reversible error, the argument must do more than merely imply or
indirectly allude to the defendant=s failure to
testify;  the argument must be manifestly
intended or be of such a character that the jury would necessarily and
naturally take it as a comment on the accused=s failure to
testify.  Brown v. State, 92
S.W.3d 655, 665 (Tex. App.CDallas 2002), aff=d, 122 S.W.3d 794
(Tex. Crim. App. 2003).  It appears, when
examined in context, that the prosecutor=s argument was in
reference to statements made by appellant that had been introduced into
evidence.  Accordingly, the argument was
not erroneous and did not constitute a comment on appellant=s failure to testify.  See Varughese v. State, 892
S.W.2d 186, 191 (Tex. App.CFort Worth 1994,
pet. ref=d) (holding
reference to what defendant said in a recorded statement is not a comment on
his failure to testify);  Bethel v.
State, 842 S.W.2d 804, 808 (Tex. App.CHouston [1st
Dist.] 1992, no pet.) (holding that reference to statement made by the
defendant to police is not a comment on his failure to testify).

Appellant=s second and third
points of error are overruled.  The
judgment of the trial court is affirmed.

 

 

 

 

/s/      J. Harvey Hudson

Justice

 

 

 

 

Judgment
rendered and Opinion filed August 10, 2004.

En
Banc Court consists of Chief Justice Hedges and Justices Yates, Anderson,
Hudson, Fowler, Edelman, Frost, Seymore, and Guzman.

Publish
C Tex. R. App. P. 47.2(b).











[1]  Everclear is
190-proof grain alcohol.  State v.
Rohm, 609 N.W.2d 504, 507 (Iowa 2000). 
It is common knowledge that its ingestion may, in large doses, be
fatal.  Pemberton v. American
Distilled Spirits Co., 664 S.W.2d 690, 693 (Tenn. 1984).    





[2]  Tex. R. App. P. 50(d) (repealed
September 1, 1997).





[3]  For example,
in some cases Rule 50(d) was cited for the proposition that if the appellant
did not develop the record by way of an objection, bill of exception, motion
for new trial, etc. to show that an error had been committed in the trial
court, nothing was preserved for review. 
See, e.g., Giesberg v. State, 945 S.W.2d 120, 128 (Tex. App.CHouston [1st Dist.] 1996), aff=d, 984
S.W.2d 245 (Tex. Crim. App. 1998) (appellant failed to show in his bill of
exception what the witness would have testified to); Guzman v. State,
923 S.W.2d 792, 795 (Tex. App.CCorpus Christi 1996, no pet.) (appellant failed to
offer enough evidence of incompetency in the trial court to demonstrate any
error); Lape v. State, 893 S.W.2d 949, 960 (Tex. App.CHouston [14th Dist.] 1994, pet. ref=d) (defendant complained that trial court erred in
excluding video tape, but did not offer it when making bill of exception); Sonnier
v. State, 846 S.W.2d 406, 408 (Tex. App.CHouston
[14th Dist.] 1992), pet. granted, vacated) (defendant failed to introduce any
part of his trial record at his habeas hearing); Elam v. State, 841
S.W.2d 937, 940 (Tex. App.CAustin 1992, no pet.) (newspaper advertisement upon
which defendant relied to show trial judge was disqualified from sitting was
not introduced in evidence).

In contrast, other courts cited Rule 50(d)
for an appellant=s failure to physically deliver a sufficient record to
the appellate court by failing to include exhibits, motion hearings, pleadings,
etc. in the appellate record.  See,
e.g., Burks v. State, 904 S.W.2d 208, 209 (Tex. App.CFort Worth 1995, no pet.) (appellant brought only a
partial record up on appeal); Applewhite v. State, 872 S.W.2d 32, 33
(Tex. App.CHouston [1st Dist.] 1994, no pet.) (appellant did not
bring up court reporter=s record from a bond reduction hearing); Edwards v.
State, 850 S.W.2d 731, 736 n.3 (Tex. App.CEl Paso
1993, no pet.) (defendant failed to include record from motion to suppress
hearing); Harvey v. State, 798 S.W.2d 373, 375 (Tex. App.CBeaumont 1990, no pet.) (conviction was affirmed where
appellant failed to include an exhibit in the appellate record);  Pike v. State, 758 S.W.2d 357, 365
(Tex. App.CWaco 1988), vacated, 772 S.W.2d 130 (Tex. Crim.
App. 1989) (neither tape recording of conversation between appellant and
undercover officer nor transcription was part of record on appeal).





[4]  The rationale
articulated by the Court of Criminal Appeals for the second prong of Rousseau
is that a request for a lesser included offense charge by the State (when there
is no evidence to show that the defendant, if guilty, is guilty only of the
lesser included offense), would invite the jury to return an unwarranted
verdict not supported by the evidence.  Arevalo,
943 S.W.2d at 889.  However, it has
always been the privilege of the sovereign to choose the severity of the
offense it will undertake to prove.  If,
in an extreme example, the defendant murdered his victim and left him lying on
the sidewalk, the State would have the prerogative, if it so desired, of
prosecuting him for nothing more than littering.  Accordingly, prior to Arevalo, it was
well-established that an accused could not Acomplain
that he was charged, tried or convicted for a lesser included offense rather
than the higher or greater offense.@  Williams v. State, 342 S.W.2d 581, 582
(Tex. Crim. App. 1960).  This venerable
principle rested not on the state of the evidence, but, rather, on the inherent
power of the sovereign to selectively enforce its statutes.  In light of Arevalo, it is now
uncertain whether the State must, in every instance, prosecute a defendant for
the most severe offense the evidence will support.





[5]  This same
reasoning was employed by our sister court in Walker v. State, 994
S.W.2d 199, 203 (Tex. App.CHouston [1st Dist.] 1999, pet. ref=d).  There the
court held, AIf injury actually occurs from appellant=s deliberate conduct, the act of shooting towards the
victim constitutes more than deadly conduct.@  Id. 
Walker, however, is not controlling authority and, for reasons
stated elsewhere in this opinion, we do not find it persuasive.  





[6]  The pertinent
provisions of the State=s indictment provide that appellant:

. . . on
or about November 3, 2001, did then and there intentionally and knowingly cause
the death of Edwin Ramos, hereinafter called the Complainant, by shooting the
Complainant with a deadly weapon, namely a firearm.

It is further presented that in Harris County, Texas, Raul Ortiz,
hereinafter styled the Defendant, heretofore on or about November 3, 2001, did
then and there unlawfully intend to cause serious bodily injury to Edwin Ramos,
hereinafter called the Complainant, and did cause the death of the Complainant
by intentionally and knowingly committing an act clearly dangerous to human
life, namely by shooting the Complainant with a deadly weapon, namely a
firearm.





[7]  While deadly
conduct may be a lesser included offense of murder, it is not
necessarily a lesser included offense of murder in all cases.  AThe
determination of whether an offense is a lesser included offense must be done
on a case-by-case basis because Article 37.09 defines lesser included offenses >in terms of the offense charged and . . . in terms of
the facts of the case.=@  Jacob v.
State, 892 S.W.2d 905, 907 (Tex. Crim. App. 1995) (quoting Day v. State,
532 S.W.2d 302, 316 (Tex. Crim. App. 1975). 
For example, deadly conduct by shooting a firearm in the direction of
one or more individuals could not be a lesser included offense of murder where
the defendant is alleged to have killed the victim by stabbing him with a
knife.





[8]           Officer Miller:    Okay, so what happens next?

Raul Ortiz:         And
then we go, we go straight and then B  and then I turned around and I go B we go straight we drove about B about a block I say B 

Officer Miller:    And
you stop the car?

Raul Ortiz:         And
ah B naw I do B I left
it on drive B I just put the brakes B and I
was just looking out B I was tripping B I say
man B cause in my mind you know B cause what they got me into B and they hit my car and that=s what made me mad and so I shot, I shot my gun two
times in the air.

 





[9]  We recognize
that at least one court of appeals has concluded that deadly conduct can never
satisfy the second prong of Rousseau in a murder case.  For example, in Ramirez v. State, 976
S.W.2d 219, 227 (Tex. App.CEl Paso 1998, pet. ref=d), the
Eighth Court of Appeals held that where the victim is killed, Athe evidence cannot support a rational inference by
the jury that Appellant was guilty only of deadly conduct.@  Id.  In other words, the court held that where the
victim is killed, no rational jury could find that if guilty, the defendant was
guilty only of deadly conduct.  However,
a person satisfies the elements of 
deadly conduct even if he knowingly discharges a firearm directly at an
individual.  Tex. Pen. Code Ann. '
22.05(b)(1).  Whether the shot is fired
point blank into the victim is irrelevant. 
Whether the victim is hit, injured, or killed is of no moment.  Whether the defendant could, and perhaps
should be prosecuted for murder, is unimportantCthe
elements of deadly conduct are satisfied. 
Accordingly, we are not persuaded that a jury acts irrationally if it
convicts a defendant of deadly conduct where the evidence shows the victim has
died.





[10]  Appellant,
without explanation, also cites Gallegos v. State, 548 S.W.2d 50 (Tex.
Crim. App. 1977) as authority for his assertion that deadly conduct cannot be a
lesser included offense if the victim is injured.  Gallegos holds that reckless conduct
is a lesser included offense of assault and, therefore, assault cannot be a
lesser included offense of reckless conduct. 
We fail to see how this holding supports appellant=s contention.